96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Grace CARPENTER, Plaintiff-Appellee,
v.
Jack Laxton, et al., Defendants,
John Diefenbach and Richard Jenkins, Defendants-Appellants,
United States of America, Appellant.
 No. 95-6076.
 United States Court of Appeals, Sixth Circuit.
 Sept. 3, 1996.
 
 On Appeal from the United States District Court for the Eastern District of Tennessee, No. 94-00438; Robert Leon Jordan, Judge.
 E.D.Tenn.
 REVERSED.
 Before: SILER, MOORE, and COLE, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 In this Federal Tort Claims Act suit, defendants, John Diefenbach and Richard Jenkins, and the United States appeal the order denying their motion to substitute the United States for Diefenbach and Jenkins and to dismiss this action. For the reasons stated herein, the decision of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.
 
 I.
 
 2
 In September 1985, a Memorandum of Understanding ("local agreement") was executed by the National Park Service and the Sheriff of Scott County, Tennessee. It states that National Park Service law enforcement rangers ("rangers") working at the Big South Fork National River and Recreation Area ("BSF") will be deputized and may assist and request assistance from the Scott County Sheriff's Department for incidents in Scott County.
 
 
 3
 On January 22, 1994, the Scott County Sheriff asked BSF ranger John Diefenbach to assist with an arrest. Diefenbach and BSF ranger Richard Jenkins joined Scott County Sheriff's officers in the arrest attempt. A standoff ensued and the person who was to have been arrested, Max Carpenter, was shot to death. Diefenbach and Jenkins participated in the standoff while wearing their Park Service uniforms and received overtime pay from the Park Service for the time they spent participating in the standoff. Neither of them shot Max Carpenter.
 
 
 4
 Grace Carpenter ("Carpenter") sued several defendants, including Diefenbach and Jenkins, individually and as the administratrix of the estate of Max Carpenter. The United States, Diefenbach, and Jenkins filed a motion to substitute the United States as the party defendant for Diefenbach and Jenkins and to dismiss the claims. The district court denied the motion.
 
 II.
 
 5
 The relevant part of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act") provides,
 
 
 6
 Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title ... and the United States shall be substituted as the party defendant.
 
 
 7
 28 U.S.C. § 2679(d)(1).[1] The complaint alleges that the negligent and wrongful acts and omissions of the defendants, including Diefenbach and Jenkins, proximately caused the death of Max Carpenter.
 
 
 8
 "The U.S. Attorneys are authorized to make the certifications provided for in ... 28 U.S.C. § 2679(d) ... with respect to civil actions or proceedings brought against Federal employees in their respective districts." 28 C.F.R. § 15.3(a). In this case, the United States Attorney for the Eastern District of Tennessee provided written certification that Diefenbach and Jenkins were acting within the scope of their employment with the National Park Service in connection with the events underlying Carpenter's suit.
 
 
 9
 The Attorney General's certification provides prima facie evidence that the employee was acting within the scope of employment. Whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred.
 
 
 10
 RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1143 (6th Cir.1996) (citations omitted).[2]
 
 
 11
 Under Tennessee law, an employee acts within the scope of his employment if the employee's conduct meets the test of the RESTATEMENT (SECOND) OF AGENCY § 228 (1957). Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co., 840 S.W.2d 933, 938 (Tenn.Ct.App.1992). That test provides,
 
 
 12
 (1) Conduct of a servant is within the scope of employment if, but only if:
 
 
 13
 (a) it is of the kind he is employed to perform;
 
 
 14
 (b) it occurs substantially within the authorized time and space limits;
 
 
 15
 (c) it is actuated, at least in part, by a purpose to serve the master; and
 
 
 16
 (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
 
 
 17
 (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.
 
 
 18
 Id.
 
 
 19
 The actions of Diefenbach and Jenkins on which this case is based were "of the kind [they were] employed to perform." Id. They were employed to enforce the laws in the BSF and to give "cooperative assistance to nearby law enforcement ... agencies and for related purposes outside the National Park System." 16 U.S.C. § 1b(1).[3] They have been sued for actions undertaken while rendering that assistance.
 
 
 20
 This activity occurred "substantially within the authorized time and space limits." Tennessee Farmers, 840 S.W.2d at 938. Diefenbach and Jenkins were assisting "nearby law enforcement ... agencies" as authorized by 16 U.S.C. § 1b and by § 4 of the local agreement. The local agreement expressly calls for rangers to render assistance outside BSF when "specifically requested," as in this case.
 
 
 21
 The actions of Diefenbach and Jenkins were "actuated, at least in part, by a purpose to serve" the United States. Section 1b indicates that Congress authorized this type of activity "[i]n order to facilitate the administration of the National Park System." The local agreement by which Diefenbach and Jenkins were authorized to undertake these actions was executed expressly to "serve" that "purpose" pursuant to the authority granted by 16 U.S.C. § 1b.
 
 
 22
 In Tennessee Farmers, the court held that an employer might be liable for an employee's actions if "the employment created the necessity for travel ... as long as the employee does not deviate from the employer's business and engage in conduct the employer had no reason to expect." Id. Diefenbach and Jenkins were required by the local agreement to respond with assistance to the Scott County Sheriff. In "facilitat[ing] the administration of the National Park System," 16 U.S.C. § 1b, by assisting local law enforcement agencies, they were engaged in conduct that the United States had reason to expect due to the statutory, regulatory and local authorization of (and requirements for) the rendering of assistance. The activities of Diefenbach and Jenkins were not "incidental to the trip" into Scott County but were for the purpose of fulfilling their duties as mandated by their employer, the United States. Tennessee Farmers, 840 S.W.2d at 938. They were, therefore, under Tennessee law, acting within the scope of their employment with the United States.
 
 
 23
 Diefenbach and Jenkins were also serving the purposes of the Scott County Sheriff's Department. However, an employee's activity "that serves a dual purpose, the employer's and ... a third person's, will still be considered to be within the scope of employment." Id. (citing Leeper Hardware Co. v. Kirk, 434 S.W.2d 620, 624 (Tenn.Ct.App.1968); RESTATEMENT (SECOND) OF AGENCY § 236 (1957)); cf. Graig v. Gentry, 792 S.W.2d 77, 79 (Tenn.Ct.App.1990) (noting, in dicta, that an employee is not acting within the scope of his employment when engaged "in a mission" solely "for some other person").
 
 
 24
 Carpenter contends that Diefenbach and Jenkins were not acting within the scope of their employment because they were, under Tennessee law, "borrowed servants." Even if Diefenbach and Jenkins were "borrowed servants" during the standoff, the Tennessee courts have not indicated that one acting as a servant of a "special employer" necessarily exceeds the scope of his employment with his "general employer." Tennessee uses the "borrowed servant" doctrine only as a liability-imposing mechanism. See Bogus v. Manpower Temporary Servs., 823 S.W.2d 544, 547 (Tenn.1992) ("the 'borrowed servant' or 'loaned employee' doctrine [is used] to determine the liability of ... defendant[s]").
 
 
 25
 In Ward v. Gordon, 999 F.2d 1399, 1403 (9th Cir.1993), the court recognized this distinction in holding that a military employee serving as a "borrowed servant" of a hospital was still acting within the scope of his employment with the United States. Carpenter attempts to distinguish this case on the basis of the employee's military status in Ward. In this case, we are required to determine whether Diefenbach and Jenkins were acting within the scope of their employment with the United States on the basis of state law. RMI Titanium, 78 F.3d at 1143. In Ward the court had to determine whether the military employee was acting within the scope of his employment, as here, for purposes of 28 U.S.C. § 2679. 999 F.2d at 1403. It had to determine whether the military employee was in his "line of duty," because, under 28 U.S.C. § 2671, a military employee is within the scope of his employment if in his "line of duty." Id. (citation omitted). Finally, it had to make the "line of duty" determination based on "the applicable state law of respondeat superior." Id. Ultimately, the issue in Ward was the same issue as in this case: "We thus look to [state] law to determine whether [the employee] acted within the scope of his government employment." Id.
 
 
 26
 If the employee is acting within the scope of employment, the United States must be substituted as the party defendant. 28 U.S.C. § 2679(d)(1). The two concepts--scope of employment and borrowed servant--are not mutually exclusive. Ward, 999 F.2d at 1403-04. Because Diefenbach and Jenkins were clearly within the scope of their employment with the United States Park Service, the district court committed reversible error by not substituting the United States as the party defendant.
 
 III.
 
 27
 Arguing that Carpenter had failed to exhaust her administrative remedies, the United States moved to dismiss the wrongful death claim against the United States, pursuant to FED.R.CIV.P. 12(b)(1). This action cannot be instituted against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "[T]he administrative claim procedure prescribed in § 2675 is jurisdictional." Executive Jet Aviation, Inc. v. United States, 507 F.2d 508, 514 (6th Cir.1974). Carpenter has not instituted any administrative claims based on the actions of Diefenbach and Carpenter. Thus, the district court should have granted the motion to dismiss as to those claims for which the district court should have substituted the United States as the party defendant for Diefenbach and Jenkins.
 
 
 28
 The decision of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 The claims to which that statute refers are characterized in 28 U.S.C. § 2679(b)(1):
 The remedy against the United States ... for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil sanction or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.
 
 
 [2]
 Even though § 2679(d)(1) provides that the action "shall be deemed an action against the United States" after Attorney General certification, certification is not conclusive and judicial review is allowed. Gutierrez de Martinez v. Lamango, 115 S.Ct. 2227, 2233-34 (1995)
 
 
 [3]
 Carpenter relies on Flynn v. United States, 902 F.2d 1524 (10th Cir.1990), in which the court stated that park rangers' "statutory duties do not include the duty to investigate and render assistance ... outside of the National Park System." 902 F.2d at 1528. The Secretary of the Interior is authorized to render assistance "outside of the National Park System" by 16 U.S.C. § 1b. Diefenbach and Jenkins were rendering assistance pursuant to the local agreement which was executed pursuant to the § 1b authority. They were, therefore, acting within their authority as park rangers