# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
April 4, 2001 Session

## TERESE OVERLAND v. SWIFTY OIL COMPANY, INC.

**A Direct Appeal from the Circuit Court for Williamson County.**
**No. I-98119  The Honorable Russ Heldman, Judge.**

_____

### No. M2000-02192-COA-R3-CV - Filed July 31, 2001
_____

On October 22, 1997, an accident occurred involving two minors, Ms. JoNee O'Brien and Ms. Kari Ann White.  As a result of the accident, Ms. White, a passenger in Ms. O'Brien's automobile sustained fatal injuries.  On February 24, 1998, Ms. Terese Overland, individually and as natural mother and next of kin of Ms. White, filed a wrongful death action against Ms. O'Brien and her mother, Ms. Jackie O'Brien Woodard.  On October 22, 1998, the complaint was amended to add Swifty Oil Co., Inc. as an additional party.  The complaint alleged that the young minors obtained intoxicating liquors from Swifty's manager, Mark Erickson.  On April 14, 1999, the complaint was amended again alleging negligent supervision on behalf of Swifty.  Swifty subsequently filed a motion for summary judgment pertaining to the claims asserted by Ms. Overland on March 31, 2000.  By Memorandum of Law, the trial court granted summary judgment to Swifty on all claims on May 12, 2000.  An Order dismissing all claims against Swifty was entered May 18, 2000.  On July 5, 2000, an Order of compromise and settlement was entered effectively dismissing all the claims against the defendants excluding Swifty.  Notice of this appeal soon followed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DON R. ASH, SP. J., delivered the opinion of the court, in which CANTRELL, J., and SWINEY, J joined.

G. Thomas Nebel, Nashville, Tennessee, for the appellant, Terese Overland.

Stephen K. Heard and Jennifer A. Lawrence, Nashville, Tennessee, for the appellee, Swifty Oil, Co. Inc.

## OPINION

I.

This case arises from an automobile accident involving two minors that were drinking while driving.  On October 22, 1997 minors JoNee O'Brien ("Ms. O'Brien") and Kari Ann White ("Ms. White") visited Swifty Oil Co. Inc. ("Swifty") where they purchased a bottle of Jim

Beam alcohol from store manager, Mark Erickson ("Mr. Erickson").  Although Swifty's does not sell alcohol on the premises, Mr. Erickson purchased alcohol off the premises and brought it to Swifty's for resale to the minors.  Ms. O'Brien and Ms. White purchased the alcohol from Mr. Erickson and subsequently left Swifty's. As they were en route to Richland Country Club to borrow a truck from a friend, they began consuming the Jim Beam alcohol Mr. Erickson provided to them. The two were planning on taking the truck up to Rattlesnake Hill, a remote location that required a four-wheel drive vehicle, where Ms. White intended to meet her boyfriend, Travis Robeson ("Mr. Robeson").   The purpose of the meeting was to discuss the relationship problems between Ms. White and Mr. Robeson.

Once Ms. O'Brien and Ms. White reached Rattlesnake Hill they continued to drink. They tried to convince Mr. Robeson to join them, but he declined. Ms. White and Mr. Robeson subsequently had a private conversation in his vehicle.   After the conversation Ms. White became upset and started to become emotional.  Mr. Robeson left Ms. O'Brien and Ms. White at Rattlesnake Hill. Ms. O'Brien put Ms. White in the truck and drove away. As she tried to calm Ms. White the truck was going at a rate of 45 miles per hour.  Shortly thereafter, Ms. O'Brien ran off the road and struck a mailbox and then a culvert.  Ms. White died at the scene.  O'Brien was charged and plead guilty to DUI and vehicular homicide.

On February 24, 1998, Terese Overland ("Ms. Overland"), mother of Ms. White filed a complaint against Ms. O'Brien and her mother, Jackie O'Brien Woodard.  Later, Swifty was added as an additional defendant to the action.

Swifty's main course of business is the sale of gasoline, oil, cigarettes, cigarette lighters, and sodas throughout the states of Indiana, Kentucky, Ohio and Tennessee.  Swifty's does not sell any sort of alcohol on their premises.  Swifty's employee handbook strictly prohibits employees from possessing or bringing alcohol on the premises.  During the regular course of their business, Swifty conducts monthly announced and unannounced audits of approximately 170 Swifty stores. The audits never revealed any impropriety on behalf of Mr. Erickson.  Mr. Erickson's work history exemplified that he was a good and responsible employee.   From between the time Mr. Erickson was named manager of the Franklin Swifty store and the accident, Swifty was unaware of any allegations regarding Mr. Erickson selling alcohol to minors.

The trial court granted summary judgment in favor of Swifty.  The three issues for this court's consideration is whether genuine issues of material fact exists pertaining to Ms. Overland's claims of negligent supervision and *respondeat superior* and whether Swifty is liable under the Restatement (Second) of Torts § 317.

II.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. If the court finds there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law, the court must affirm the

trial court's granting of the summary judgment motion. **See Byrd v. Hall**, 847 S.W.2d 208, 211 (Tenn. 1993).

In making it's determination, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. **Luther v. Compton**, 5 S.W.3d 635, 639 (Tenn. 1999). When reviewing summary judgment cases, the court must decide "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.04.

The Court in **Byrd**, 847 S.W.2d at 214, enunciated three elements that "lie at the heart of evaluating a summary judgment motion." To make a determination on summary judgment, we must decide "(1) whether a factual dispute exists; (2) whether that fact is material; and (3) whether that fact creates a genuine issue for trial." **Id.**

During summary judgment cases instances of burden shifting occurs. The party seeking summary judgment carries the burden of persuading the court that no genuine issues of material fact exist. **Id.** at 215. Further, if this burden is satisfied, the burden subsequently shifts to the nonmoving party to set forth specific facts to show there is a genuine issue of material fact requiring submission to the trier of fact. **Id.** However, during this burden shifting, "the non-moving party may not rely on allegations or denials of his pleadings in carrying out his burden." **Id.** Thus, when there is a legitimate dispute as to any material fact or any doubt as to the conclusions to be drawn from the undisputed facts, the order granting summary judgment must be denied. **Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995).

III.

Ms. Overland's first claim is based on Swifty's alleged negligence in failing to adequately supervise Mr. Erickson's actions. Under the theory of negligent supervision a plaintiff may be able to recover for harm caused by the intentional act of the defendant's employee when the intentional act is committed outside the scope of the employee's employment. **Smith v. Keyport Self-Storage**, 2000 Tenn. App. LEXIS 301 (Ct. App. 2000) citing **Hays v. Patton-Tully Transp. Co.**, 844 F. Supp. 1221, 1222 (W.D. Tenn. 1993). When considering the harm caused by the employee's action the court must determine whether the act was foreseeable to the employer. **Id.** A defendant is only under a duty to act to prevent injury from a harm that is foreseeable.

The Tennessee Supreme Court in **Doe v. Linder Construction Co., Inc.**, provided an exhaustive analysis of when a risk may be considered foreseeable:

> [A] risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom a duty is owed is probable. Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury,

there is no negligence and no liability. Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent.

845 S.W.2d 173, 178 (Tenn. 1992).

The pivotal issue regarding Ms. Overland's claim of negligent supervision is whether there was any showing from which it can be said that Swifty reasonably knew or should have known that Mr. Erickson was selling liquor to minors. Swifty argues that they cannot be held liable for negligence because there was no proof that Mr. Erickson's action was a reasonably foreseeable event, which they could have taken steps to prevent. Ms. Overland contends that knowledge of Swifty's other employees was sufficient to put Swifty on notice of Mr. Erickson's actions.

Ms. Overland relies primarily on the recent Tennessee Supreme Court case **Staples v. CBL & Associates, Inc.**, 15 S.W.3d 83 (Tenn. 2000), regarding the issue of foreseeability to justify her negligent supervision claim. The **Staples** case involved the abduction of a department store customer from the shopping mall. The plaintiff in the case had been to several different points of interests when she noticed a suspicious man following her. **Id.** at 86. However, at that point she was not concerned. **Id.** The plaintiff subsequently went to Proffits department store to browse in the dress department. **Id.** During her browsing she noticed the same man whom she had earlier thought was following and watching her was only standing six feet away from her. **Id.** At that point she became concerned that she was being followed. **Id.**

Following this encounter, the plaintiff went directly to another department in Proffits, where she knew two of the employees working. **Id.** When one of the employees asked what was wrong, the plaintiff told the two women that a suspicious man was stalking her. **Id.** During this exchange, the plaintiff described the suspicious man to the employees and discussed whether to call security regarding this matter. **Id.** The plaintiff was later abducted from Proffits by the suspicious man and taken to Dalton, Georgia. **Id.** at 87.

The plaintiff in the case brought suit against Proffits alleging that the store owed her a duty of care because the abduction was foreseeable. **Id.** The Supreme Court found that the exchange between the two employees and the plaintiff put the department store on notice that the plaintiff was in danger of being abducted. **Id.** at 90-91 The Court concluded that the harm she encountered was foreseeable. **Id.**

In this case, the evidence presented on the issue of foreseeability was simply that two other employees were in the vicinity of Swifty premises when Mr. Erickson left to buy liquor for resale to the minors. Here, it is undisputed that Mr. Erickson, manager of Swifty's, left the premises of Swifty to buy liquor and sell it to minors. This egregious act subsequently played a contributing factor in the death of Ms. JoNee O'Brien. While there was some evidence that a small amount of minors knew Mr. Erickson was illegally selling alcohol, there was no evidence that Swifty knew or should have known of these illegal acts on behalf of Mr. Erickson. Swifty conducted announced and unannounced monthly audits through its supervisors, however the audits of the Swifty store in question never yielded findings of impropriety by Mr. Erickson. Furthermore, based on the findings of Swifty's periodic audits, Swifty had no reason to believe

that illegal activities were taking place on their premises since the activities were unrelated to their regular course of business.

The case at bar can be distinguished from the **Staples** case. In **Staples**, the two employees that came into contact with the plaintiff were given **specific knowledge** and placed on notice that an illegal act was occurring and subsequently failed to use reasonable care in alleviating the matter. **Id.** at 86 (emphasis added). Since the two employees were in the vicinity when their exchange took place with the plaintiff they were equipped with the specific knowledge that the harm she encountered later from the stalker was foreseeable. **Id.** at 90-91. It is undisputed that the Swifty employees knew that there was occasional drinking of liquor going on by minors on their premises. However, there is no proof in the record, either by affidavits or depositions that the other Swifty employee's were on notice that Mr. Erickson was leaving the premises to purchase alcohol. We are of the opinion that this case does not rise to the level foreseeablity that was present in **Staples**.

Therefore, after reviewing "all the circumstances" of this case we find that there was no reasonable basis on which Swifty could foresee any potential danger. **Linder**, 845 S.W.2d at 178-79 (quoting **Corbitt v. Ringley-Crockett, Inc.**, 496 S.W.2d 914, 918 (Tenn. Ct. App. 1973)). Based on the record, we must conclude that the evidence was insufficient to support a finding that the Swifty employees or Swifty Oil Co. Inc. could have reasonably foreseen the actions of Mr. Erickson. In lieu of the above-mentioned findings and viewing the record in the light most favorable to the nonmovant, Ms. Overland, we find that no genuine issue of material fact exists. Accordingly, the order of the trial court granting summary judgment in regard to the claim of negligent supervision in favor of Swifty is affirmed.

IV.

The second issue for this court's consideration is whether the trial court's grant of summary judgment in favor of Swifty is warranted under the theory of *respondeat superior*. Under the doctrine of *respondeat superior*, an employer may be liable for negligent acts committed by an employee while acting in the scope of his employment. **See Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Co.**, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). For liability to attach to the employer, the plaintiff must show that "(1) the person who caused the injury was an employee, (2) the employee was working on the employer's business at the time of the accident, and (3) the employee was acting within the scope of his employment when the injury occurred." **See id.**

In the case at bar, it is undisputed that Mr. Erickson was an employee of Swifty and was working in the capacity of manager at the time of this incident. However, the pivotal issue regarding the facts of this case is whether Mr. Erickson was acting "within the scope of [Swifty's] business purpose."

Generally, an employer may also be liable for acts of his employee that are outside the scope of employment if done at the direction of the employer. **Kinnard v. Rock City Const. Co.**, 286 S.W.2d 352, 354 (Tenn.App. 1955). The law in Tennessee is clear that "when a servant deviates from his line of duty and engages in a mission of his own or for some third

person, the master cannot be held liable under the rule of *respondeat superior*." **Craig v. Gentry**, 792 S.W.2d 77, 79 (Tenn. Ct. App. 1990). Furthermore, determining whether an employee is acting within the scope of his employment is generally one of fact for the jury; but, where the employee's departure from the employer's business is of such a "marked and decided character" that reasonable minds could reach but one conclusion under the undisputed facts, summary judgment is proper. **Id.** at 80; **Tennessee Farmers**, 840 S.W.2d at 936-7.

Here, Ms. Overland alleges that in Mr. Erickson's capacity as manager he routinely provided intoxicating liquors to minors during the broad scope of powers Swifty vested in him. Ms. Overland further contends that it was foreseeable to Swifty that Mr. Erickson sold and provided liquor to minors at its store location in the company of other Swifty employees. Swifty counters Ms. Overland's theories by arguing that Mr. Erickson was acting outside the scope of his employment when he purchased and illegally sold alcohol to the minor. We are not persuaded by the arguments presented by Ms. Overland. A reasonable person could not conclude Mr. Erickson was acting in the course and scope of his employment when he purchased alcohol and sold it to a minor. Mr. Erickson clearly went beyond his parameters as manager when he left the premises of Swifty to buy alcohol and provide it to the minors. We are not convinced it was foreseeable to Swifty that one of its employees would commit such an egregious act. Simply because the manager is in supervisory position does not necessarily mean that he is fully operating within the scope of his employment when his departure from Swifty is "of marked and decided character." Ms. Overland's argument with regard to this issue is misplaced. Like the court in **Tennessee Farmers**, we are of the opinion that the question of whether an employee is acting within the scope of his employment can be reviewed as a question of law when the employee's acts are clearly beyond the scope of his authority. S.W.2d at 937. The trial court's grant of summary judgment in favor of Swifty is affirmed as far as it relates to Ms. Overland's *respondeat superior* claim.

V.

The final issue for consideration is whether Ms. Overland has a cause of action pursuant to Restatement (Second) of Torts § 317. § 317 provides in full as follows:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a)     the servant
>
>> (i)     is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>> (ii)    is using a chattel of the master, and
>
> (b)     the master

(i)    knows or has reason to know that he has the ability to control his servant, and

(ii)   knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965).

No court in Tennessee has ever expressly adopted Restatement (Second) of Torts § 317 as a viable cause of action. **Gleaves v. Checker Cab Transit Corp.**, 1998 WL 639109 at *11 (Tenn. Crim. App. 1998). Furthermore, the court in **Nichols v. Atnip**, 844 S.W.2d 655 (Tenn. App. 1992) found that "the common law rule that persons have no duty to protect others from harm they did not cause, while harsh, remains the law." In lieu of the state of law as it exists today, we are not willing to formally adopt § 317 as Tennessee law based on the facts of this particular case. Therefore, the trial courts grant of summary judgment regarding Restatement (Second) of Torts § 317 in favor of Swifty is hereby affirmed.

VI.

Accordingly, the judgment of the trial court granting summary judgment in favor of Swifty is affirmed. The costs on appeal are taxed against Terese Overland.

_____
DON R. ASH, SPECIAL JUDGE