# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
## January 18, 2012 Session

## SHAUN L. TYUS v. PUGH FARMS, INC. ET AL.

### Direct Appeal from the Circuit Court for Dyer County
### No. 09-CV-87   Lee Moore, Judge

### No. W2011-00826-COA-R3-CV - Filed March 19, 2012

This appeal arises from injuries Plaintiff sustained after being assaulted by a co-worker while working for the Defendants. Plaintiff filed a complaint against the Defendants alleging vicarious liability for the assault committed by the co-worker, and liability for the negligent hiring, supervision, and retention of the co-worker, and liability for negligent and intentional infliction of emotional distress. Subsequently, the trial court granted summary judgment in favor of the Defendants after concluding that they owed no duty to Plaintiff and that the assault was not within the co-worker's scope of employment. Thereafter, Plaintiff filed a motion under Rule 60.02 of the Tennessee Rules of Civil Procedure and a motion to recuse. The trial court granted the Rule 60.02 motion, denied the motion to recuse, and Plaintiff appealed. After reviewing the record, we affirm in part, reverse in part, and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in Part and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Lashawn A. Williams and Darrell J. O'Neal, Memphis, Tennessee, for the appellant, Shaun L. Tyus.

James A. Hamilton, III, Dyersburg, Tennessee, for the appellees, Pugh Farms, Inc., Steve Pugh and Eugene Pugh.

## OPINION

## I. Background and Procedural History

In May 2008, Shaun L. Tyus ("Mr. Tyus") began working at Pugh Farms, Inc. ("Pugh Farms") as a farm laborer. Pugh Farms is a farming operation owned by three brothers, Eugene Pugh, Steve Pugh, and Andy Pugh. Only two of the brothers, Eugene Pugh and Steve Pugh, are actively involved in the operation of the business.

On June 24, 2008, after working all day in Dyer County, Tennessee, Mr. Tyus and his co-workers gathered at a farm shed in order to return to the main location of Pugh Farms in Lauderdale County, Tennessee. After arriving at the farm shed, Max Bingham ("Mr. Bingham"), a co-worker of Mr. Tyus, complained to the supervisor, Steve Pugh, Jr., about the tractor he operated that day. Mr. Bingham told Steve Pugh, Jr. that the tractor made a whining sound throughout the day such that he could not hear himself think. Upon hearing this statement, Mr. Tyus jokingly commented that Mr. Bingham did not need to hear himself think. Soon thereafter, Mr. Tyus and Mr. Bingham began wrestling with one another. Once Mr. Bingham became agitated with Mr. Tyus, they both agreed to stop and they separated. As the employees were preparing to depart for the return trip, however, Mr. Bingham walked out of the farm shed with a metal pipe and struck Mr. Tyus in the head, knocking him unconscious. Steve Pugh, Jr. quickly intervened and wrestled with Mr. Bingham to prevent further harm to Mr. Tyus. After learning of the incident, Eugene Pugh terminated both Mr. Tyus and Mr. Bingham the following day.

On June 23, 2009, Mr. Tyus filed a complaint against Pugh Farms, Steve Pugh, Eugene Pugh (collectively as "the Pughs"), and Mr. Bingham. Mr. Tyus alleged that the Pughs were vicariously liable for the assault committed by Mr. Bingham, liable for the negligent hiring, supervision, and retention of Mr. Bingham, and liable for negligent and intentional infliction of emotional distress. Thereafter, on March 17, 2010, the Pughs filed a motion for summary judgment as to all claims asserted against them by Mr. Tyus. After conducting a hearing on the motion, the trial court found that the Pughs owed no duty to Mr. Tyus because the assault was not reasonably foreseeable. The trial court further held that the assault was not within the scope of Mr. Bingham's employment because it had nothing to do with the Pughs' farm operation. As such, the trial court granted summary judgment in favor of the Pughs, effectively dismissing all of Mr. Tyus' claims against them. On September 7, 2010, in order to make the ruling final and appealable, the trial court entered a final order pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

On November 30, 2010, Mr. Tyus filed a motion to recuse and a motion for relief from judgment pursuant to Rule 60.02(1) of the Tennessee Rules of Civil Procedure. Mr.

Tyus alleged that recusal was necessary because the trial judge, Judge R. Lee Moore, Jr. ("Judge Moore"), was a former partner in the same law firm as the Pughs' counsel, and also received campaign contributions from members of the Pughs' counsel's law firm and their spouses. Moreover, Mr. Tyus sought relief under Rule 60.02(1) because lead counsel on his case, Mr. Darrell O'Neal ("Mr. O'Neal"), was serving in the military in Afghanistan when the trial court entered the final order, and the Pughs' counsel never mailed a copy of the final order to Mr. O'Neal's office in Memphis, Tennessee. Although the Pughs' counsel mailed a copy of the final order to Mr. O'Neal's co-counsel, Ms. LaShawn Williams ("Ms. Williams"), at her office in Nashville, Tennessee, she had recently moved to Memphis to work for Mr. O'Neal's law firm during his time of deployment. As a result, Ms. Williams did not discover the final order until after it was forwarded from her Nashville office to Mr. O'Neal's Memphis office, at which time it was too late to timely file a notice of appeal. On February 28, 2011, after conducting a hearing on Mr. Tyus' motions, the trial court denied the motion to recuse, and granted the Rule 60.02(1) motion. On July 18, 2011, the trial court again entered a final order pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Mr. Tyus timely filed a notice of appeal to this Court.

## II. Issues Presented

Mr. Tyus presents the following issues, as we perceive them, for our review:

(1)     Whether the trial court erred in granting summary judgment in favor of the Pughs, and

(2)     Whether the trial court erred in denying Mr. Tyus' motion to recuse?

The Pughs, in the posture of the Appellees, raise the following additional issue:

(1)     Whether the trial court erred in granting Mr. Tyus' Rule 60.02 motion?

## III. Discussion

### A. Rule 60.02 Motion

We begin our discussion by addressing the Pughs' argument that the trial court erred in granting Mr. Tyus relief pursuant to Rule 60.02(1) of the Tennessee Rules of Civil Procedure. Rule 60.02(1) provides: "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or

proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . ." The Pughs allege that Mr. Tyus was not entitled to relief under Rule 60.02(1) because his counsel simply forgot to file a notice of appeal in a timely manner. To support this position, the Pughs rely on *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181 (Tenn. Ct. App. 1985), in which this Court concluded that "[t]he mere unilateral inadvertence or mistake of counsel is generally not considered to be 'excusable neglect.'" *Id.* at 185.

When a party seeks relief from a final judgment pursuant to Rule 60.02, the burden to demonstrate a basis for relief rests with that party. *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991) (citing *Brumlow v. Brumlow*, 729 S.W.2d 103, 106 (Tenn. Ct. App. 1986); *Jefferson*, 699 S.W.2d at 186). "The bar for obtaining relief is set very high, and the burden borne by the moving party is heavy." *Delong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005) (citing *Johnson v. Johnson*, 37 S.W.3d 892, 895 n. 2 (Tenn. 2001)). Ultimately, even if a party proves grounds for relief, the trial court may refuse in its discretion to set aside a final judgment. *John Barb, Inc. v. Underwriters at Lloyds of London*, 653 S.W.2d 422, 423 (Tenn. Ct. App. 1983) (citing Tenn. R. Civ. P. 60.02).

This Court will not overturn a trial court's decision to grant or deny relief under Rule 60.02 unless the trial court abused its discretion. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003) (citing *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993)). "The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *Thompson v. Chafetz*, 164 S.W.3d 571, 574 (Tenn. Ct. App. 2004) (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). The abuse of discretion standard does not allow this Court to substitute its judgment for that of the trial court. *Henry*, 104 S.W.3d at 479 (citation omitted). Rather, we will uphold the decision of the trial court so long as reasonable minds could disagree about its correctness, *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001), and we will set aside the trial court's decision only if it applied an incorrect legal standard or reached an illogical or unreasoned decision that causes an injustice to the complaining party. *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008) (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)).

After reviewing the record, we find no abuse of discretion in the trial court's decision to grant Mr. Tyus relief under Rule 60.02(1). Mr. Tyus' counsel, Mr. O'Neal and Ms. Williams, did not willfully or intentionally disregard the time to file a notice of appeal. Mr. O'Neal was deployed in Afghanistan at the time the trial court entered the final order. Although Mr. O'Neal served as lead counsel for Mr. Tyus, the Pughs' counsel did not mail a copy of the final order to his office in Memphis. While the Pughs' counsel did mail a copy

of the final order to Ms. Williams' office in Nashville, she had already moved to Memphis to work for Mr. O'Neal's law firm at that time. Thus, Ms. Williams did not discover the final order until it was forwarded from her Nashville office to Mr. O'Neal's office in Memphis, at which time it was too late to timely file a notice of appeal. This is not a case of carelessness or ignorance of counsel. On the contrary, we find that these extraordinary circumstances amount to the type of "mistake, inadvertence, surprise or excusable neglect" that Rule 60.02 was designed to relieve. Accordingly, we affirm the trial court's decision to grant Mr. Tyus' Rule 60.02(1) motion.

## B.  Recusal

Next, we address Mr. Tyus' argument that the trial court erred in denying his motion to recuse. In support of his argument, Mr. Tyus cites the fact that Judge Moore was a former partner in the Pughs' counsel's law firm, and also that partners of the Pughs' counsel's law firm and their spouses contributed to Judge Moore's election campaign in 2006. Mr. Tyus, relying on Tennessee Supreme Court Rule 10, Canons 2(A) and 3(E)(1),[1] insists that these facts would lead a person of ordinary prudence to reasonably question the impartiality of Judge Moore, and thus warranted recusal.

A trial judge's decision to grant a recusal motion is within his or her discretion. *Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009); *Bd. Of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 546 (Tenn. 2004). Accordingly, this Court will not reverse such a decision unless there is a clear abuse of discretion. *Bean*, 280 S.W.3d at 805; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001). The decision to recuse, however, does not rest solely with the trial court's subjective belief that he or she can act impartially. *Bean*, 280 S.W.3d, at 805; *Camp v. Camp*, No. W2010–1037–COA–R3–CV, 2011 WL 2567542, at *7 (Tenn. Ct. App. June 29, 2011). The standard for recusal in Tennessee is whether "a person of ordinary prudence in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Bean*, 280 S.W.3d at 805. As noted by the Tennessee Supreme Court, regardless of the trial judge's subjective belief that he or she can be impartial, he or she may still be disqualified if the judge's impartiality can reasonably be questioned, as "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* at 805 (quoting Tenn. Sup. Ct. R. 10, Canon 3(E)(1)).

---

[1]Tennessee Supreme Court Rule 10, Canon (2)(A) states that judges "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Tennessee Supreme Court Rule 10, Canon 3(E)(1), states that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."

After a thorough review of the record, we find no abuse of discretion in Judge Moore's refusal to recuse himself. Judge Moore was appointed to the Circuit Court for the Twenty Ninth Judicial District of Tennessee on February 1, 1997, and his interests in the Pughs' counsel's law firm were sold in 1999. Thus, at the time of Mr. Tyus' recusal motion, more than thirteen years elapsed since Judge Moore had any business dealings with the Pughs' counsel's law firm, and over ten years since he received any compensation for outstanding legal matters owed to him while a partner at the firm. To avoid any appearance of impartiality, Judge Moore intentionally avoided hearing any cases involving his former law firm for many years following his appointment. Moreover, all of the contributions made by the partners of his former law firm and their spouses were handled by Judge Moore's campaign treasurer, and Judge Moore was not involved in raising any money for the campaign. As this Court has noted, "judges in rural areas sometimes know the parties who appear before the court, and may even share a friendship with them, but this fact alone does not mandate recusal." *Camp*, 2011 WL 2567542, at *8. In light of the record before us, there is no basis for this Court to find objectively that Judge Moore's impartiality could reasonably be questioned. Therefore, we affirm the trial court's denial of Mr. Tyus' recusal motion.

## C. Summary Judgment

Finally, we address Mr. Tyus' argument that the trial court erred in granting summary judgment in favor of the Pughs. A trial court's decision to grant or deny a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness. *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). As such, "we must freshly determine whether the requirements of Tenn. R. Civ. P. 56 have been met." *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1997) (citing *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 44–45 (Tenn. Ct. App. 1993)).

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The burden is on the moving party to demonstrate this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). "It is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id.* at 8. If the motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208,

215 (Tenn. 1993)).  The non-moving party may accomplish this by:

> (1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the record, we must determine whether factual disputes exist.  "In doing so, we must consider the pleadings and the evidentiary materials in the light most favorable to the movant's opponent, and we must draw all reasonable inferences in the opponent's favor." *Hunter*, 955 S.W.2d at 51 (citing *Byrd*, 847 S.W.2d at 210–11).  If we discover a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners, L.L.C. v. Lemme*, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing *Byrd*, 847 S.W.2d at 214).  "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215.  A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.*  The grant of summary judgment is only appropriate if "the evidence and the inferences reasonably drawn from the evidence permit reasonable persons to reach only one conclusion—that the moving party is entitled to a judgment as a matter of law." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010) (citing *Kinsler*, 320 S.W.3d at 801; *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)).  When a dispute exists or there is any uncertainty regarding a material fact, however, the trial court must "overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues." *Thompson v. Memphis City Sch. Bd. of Educ.*, No.W2010–02631–COA–R3–CV, 2012 WL 134245, at *8 (Tenn. Ct. App. Jan. 18, 2012) (quoting *Evco Corp. v. Ross*, 528 S.W.2d 20, 24-25 (Tenn. 1975)).

### 1.  Duty

First, regarding Mr. Tyus' claims for negligent hiring, supervision, and retention of Mr. Bingham, and negligent and intentional infliction of emotional distress, the trial court granted summary judgment in favor of the Pughs based on its conclusion that they did not owe a duty to Mr. Tyus because the assault was not reasonably foreseeable.  "Duty is the legal obligation that a defendant owes a plaintiff to conform to a reasonable person standard

of care in order to protect against unreasonable risks of harm." *Burroughs v. Magee*, 118 S.W.3d 323, 328–29 (Tenn. 2003); *McClung v. Delta Square Ltd. P'ship.*, 937 S.W.2d 891, 894 (Tenn. 1996). As the Tennessee Supreme Court recently explained in *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359 (Tenn. 2009):

> In order to determine whether a duty is owed in a particular circumstance, courts must first establish that the risk is foreseeable, and, if so, must then apply a balancing test based upon principles of fairness to identify whether the risk was unreasonable. That is, in consideration of, among other things, the presence or absence of prior similar incidents, and other circumstances, does the foreseeability of the harm outweigh the burden of the duty imposed? In *Downs ex rel. Downs v. Bush*, we held as follows:
>
>> The foreseeability of the harm is a key factor in the equation because, in general terms, "[f]oreseeability is the test of negligence." "'A risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable.'" However, foreseeability alone does not create a duty to exercise reasonable care. If the risk is foreseeable, then courts should weigh the remaining factors to determine if an imposition of duty is justified.
>
> Although no duty will arise when a risk of injury is not generally foreseeable, foreseeability alone "is not, in and of itself, sufficient to create a duty." Rather, when a minimum threshold of foreseeability is established, courts must engage in "an analysis of the relevant public policy considerations," to determine whether a duty enforceable in tort must be imposed. While not exclusive, the factors are as follows:
>
>> [T]he foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Id.* at 365–66 (internal citations omitted).

On appeal, Mr. Tyus argues that the Pughs failed to carry their burden as the party

moving for summary judgment because they did not affirmatively negate the essential element of duty or establish that he could not prove it at trial. In support of his argument, Mr. Tyus cites to the deposition of his supervisor, Steve Pugh, Jr., which he alleges contains several issues that preclude the grant of summary judgment in favor of the Pughs. First, Steve Pugh, Jr. described two separate incidents in which Mr. Bingham was involved in an altercation with a co-worker while working at Pugh Farms. The first incident involved Mr. Bingham shoving a co-worker to the ground, and the second incident involved Mr. Bingham pulling a knife on another employee. Next, Steve Pugh, Jr. stated the he knew of Mr. Bingham's history of fighting while in high school, and that since Andy Pugh, partial owner of Pugh Farms, was the principal of the high school Mr. Bingham attended, he assumed Andy Pugh also knew of Mr. Bingham's history of fighting. Finally, Steve Pugh, Jr. stated that he was not aware of Pugh Farms ever providing any policy, procedure, or training regarding workplace conduct and horseplay. In sum, Mr. Tyus argues that this evidence raises genuine issues of material fact as to whether the assault on Mr. Tyus was reasonably foreseeable.

In response, the Pughs contend that summary judgment was proper because they affirmatively negated the essential element of duty by establishing that the assault by Mr. Bingham was not reasonably foreseeable. In support of their argument, the Pughs emphasize that horseplay was a regular occurrence amongst their employees, and that "it was a way to break up the monotony of the day and for the workers to have friendly relations with one another." The Pughs characterize Mr. Bingham's past altercations with co-workers as horseplay because no one had to intervene to separate or break up the employees involved, no injuries resulted, and no threats were made. Further, regarding Mr. Bingham's history of fighting in high school, the Pughs stress that Andy Pugh never took part in the operation or management of Pugh Farms, and that Eugene Pugh never knew of any history of crime or fighting during Mr. Bingham's thirteen years of employment prior to the assault on Mr. Tyus. In light of these facts, the Pughs argue that they owed no duty to Mr. Tyus, and therefore the trial court properly granted summary judgment in their favor.

Based on our careful review of the record, we have determined that the Pughs failed to affirmatively negate the essential element of duty. The deposition testimony of Steve Pugh, Jr. raises several genuine issues of material fact regarding the foreseeability of the assault committed by Mr. Bingham. The Pughs' characterization of Mr. Bingham's actions as horseplay does not change their burden on summary judgment. Viewing all of the evidence presented in the light most favorable to Mr. Tyus, and drawing all reasonable inferences in his favor, it is our opinion that a reasonable jury could reach more than one conclusion as to whether the Pughs owed a duty to Mr. Tyus. As such, summary judgment was inappropriate. Accordingly, we reverse the decision of the trial court as it relates to the issue of duty.

## 2. Vicarious Liability

Finally, we must determine whether the trial court's grant of summary judgment in favor of the Pughs was warranted under the *respondeat superior* doctrine. Under the *respondeat superior* doctrine, "an employer may be held liable for the torts committed by his or her employees while performing duties within the scope of employment." *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 363 (Tenn. 2011) (quoting *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000)). To establish an employer's vicarious liability under the *respondeat superior* doctrine, "the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). In the case at bar, it is undisputed that Mr. Bingham was an employee of the Pughs and was working in the capacity of a farm laborer at the time he assaulted Mr. Tyus. Thus, the dispositive issue is whether Mr. Bingham was acting within the scope of his employment when he assaulted Mr. Tyus.

In cases involving the *respondeat superior* doctrine, Tennessee courts have turned to the Restatement (Second) of Agency to determine "whether an act was within the scope of employment in a particular case." *Hughes*, 340 S.W.3d at 363 (citing *Kelly v. La. Oil Refining Co.*, 167 Tenn. 101, 66 S.W.2d 997, 998 (Tenn. 1934); *Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 937 ("The courts have frequently turned to the Restatement (Second) of Agency for the theoretical framework for deciding whether an employee's conduct is within the scope of his or her employment.")). The Restatement (Second) of Agency sets out the following test for determining whether an act by an employee was performed within the scope of employment:

> (1) Conduct of the servant is within the scope of employment if, but only if:
>     (a) it is of the kind he is employed to perform;
>     (b) it occurs substantially within the authorized time and space limits;
>     (c) it is actuated, at least in part, by a purpose to serve the master; and
>     (d) if force is intentionally used by the servant against another,
>     the use of force is not unexpectable by the master.
> (2) Conduct of the servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228. For further guidance, Tennessee courts have also looked to § 229 of the Restatement (Second) of Agency which provides the following factors to consider:

(2) In determining whether or not the conduct although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect that such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal.

Restatement (Second) of Agency § 229.

On appeal, Mr. Tyus argues that the assault committed by Mr. Bingham falls within the scope of his employment because it occurred at work, the Pughs permitted horseplay amongst their employees, and given Mr. Bingham's prior altercations with co-workers, the assault was foreseeable. On the other hand, the Pughs contend that Mr. Bingham's actions were unauthorized, personal in nature, unrelated to his job duties as a farm laborer, and in no way benefitted or furthered the Pughs' business. This dispute, however, illustrates the trial court's error in granting summary judgment on this issue.

The question of whether an employee was acting within the scope of employment is generally a question of fact.[2] *Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 936–37. This Court previously acknowledged that, "[w]hile the principles embodied in the respondeat superior doctrine are relatively easy to articulate, they are not always easy to apply." *Id.* at 937 (citation omitted). "The doctrine does not lend itself to bright line rules . . . but rather

---

[2]While inapplicable to the case at bar, we acknowledge that the question of whether an employee was acting within the scope of employment becomes a question of law "when the facts are undisputed and cannot support conflicting conclusions" and "when the employee's acts are clearly beyond the scope of his authority." *Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 937 (citations omitted).

requires the weighing and balancing of the facts and circumstances of each case." *Id.* (citations omitted). When evaluating a motion for summary judgment, however, the trial judge is not permitted to weigh the evidence, and "must accept the nonmoving party's evidence as true, and view both the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party." *Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011) (citations omitted). This genuine factual issue can only be resolved by a trier of fact, and the trial court's grant of summary judgment in favor of the Pughs regarding their vicarious liability for the assault committed by Mr. Bingham was improper. Accordingly, we reverse the trial court's decision.

## IV. Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and remand this matter for proceedings consistent with this Opinion. Costs of this appeal are taxed equally to the Appellant, Mr. Tyus, and his surety, and the Appellees, Pugh Farms, Inc, Steve Pugh and Eugene Pugh, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE