# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### May 24, 2012 Session

## DAVID BYARS and wife, ELIZABETH BYARS, M.D. v. RANDY FRAZIER and JEFF KELLEY

**Direct Appeal from the Circuit Court for Weakley County**
**No. 2011-CV11      William B. Acree, Judge**

---

**No. W2011-01771-COA-R3-CV - Filed July 10, 2012**

---

The trial court granted Defendants' motion to dismiss, finding, among other things, that Defendants were entitled to GTLA immunity. Because we find a question of fact exists as to whether Defendants acted within the scope of their employment in communicating with Plaintiff's teaching supervisor, in communicating with the named individuals, and in ordering destruction of the surveillance video tapes, we reverse the trial court's dismissal of Plaintiffs' slander, false light, defamation, intentional infliction of emotional distress and loss of consortium claims with regard to such conduct. The decision of the trial court is affirmed in all other respects. The case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed in Part and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellants, David Byars and wife, Elizabeth Byars, M.D.

Jay M. Atkins, Oxford, Mississippi, for the appellees, Randy Frazier and Jeff Kelley

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

David Byars, Jr. ("Mr. Byars" or "Plaintiff") is a native of Martin, Tennessee, in Weakley County and a graduate of Westview High School in Martin.[1]  After graduating high school, Mr. Byars played varsity football at Lambuth University and then competed as a cheerleader at the University of Tennessee at Knoxville.  Ultimately, Mr. Byars returned to Martin, and from August 2007 to February 2011, he acted as both a teacher and a gymnastics/cheerleading coach at Westview High School.

Throughout his lifetime, Mr. Byars has built and maintained an excellent reputation within the Martin/Weakley County community. However, Mr. Byars was involved in an incident on January 21, 2011, after which Weakley County Board of Education Director Randy Frazier and Weakley County Board of Education Assistant Director Jeff Kelley allegedly acted in a manner to tortiously damage Mr. Byars' reputation.  Mr. Byars' Complaint describes the incident as follows:

> On Friday, January 21, 2011, the Westview cheerleading squad was assembled in the Westview gymnasium for a practice session.
>
> In addition to the students who were part of the cheerleading squad, among those present at the Friday, January 21, 2011 practice session, were [Mr.] Byars, [Mr.] Byars' father (hereinafter "Father") [who is the Westview High School principal,] [Mr.] Byars' sister (hereinafter "Sister"), [Mr.] Byars' stepmother [("Stepmother")], [Mr.] Byars' stepsister [("Stepsister")], Mrs. Frances Cates and a student who is a member of the Westview girls basketball team.
>
> During the cheerleading practice session on Friday, January 21, 2011, [Mr.] Byars and [Sister], out of the hearing of others assembled for the cheerleading practice session, engaged in a verbal argument pertaining to private family matters.

---

[1] This is an appeal from the trial court's grant of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted.  When reviewing a dismissal for failure to state a claim, this Court must presume the truth of all factual allegations set forth in the complaint *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (citations omitted).  Accordingly, our recitation of the facts is taken from Plaintiffs' Complaint.

The verbal argument . . . escalated.

Father approached [Mr.] Byars[] as [Mr.] Byars was walking hastily away, and placed his hands on [Mr.] Byars, as if in an effort to stop [Mr.] Byars from further movement.

Immediately after Father . . . placed hands on [Mr.] Byars, [Mr.] Byars, without breaking stride, in a non-hostile but forceful manner, disengaged the hands of Father from the body of [Mr.] Byars and turned around[] to retrieve his personal belongings, at which time, Father stumbled backwards.

When Father stumbled backwards . . . Father's foot slipped out from under him as his foot stepped onto a slick-surface cardboard poster lying on the polished wood gymnasium floor.

As the foot of [Father] landed on the slick-surface cardboard poster while [Father] was moving in a backward direction, the slick-surface poster moved forward preventing [Father] from bracing his body to avoid falling onto the two-inch thick mat on which the Westview cheerleaders practiced.

Instantaneously, as Father slipped, Father bounced to his feet and again moved toward [Mr.] Byars, making a second effort to impede [Mr.] Byars as [Mr.] Byars was walking away.

After collecting his personal effects, [Mr.] Byars apologized to Father in passing, as Father was standing at the bottom of the gymnasium steps.

Within seconds, [Stepmother], who was seated in the top of the gymnasium bleachers, shouted to [Mr.] Byars to "get out and don't come back."

Immediately, [Mr.] Byars replied by shouting and pointing at [Stepmother] to "shut up" and to "mind your own business."

At precisely that time, Father aggressively approached and grabbed [Mr.] Byars by the collar of the shirt with both hands, p[i]nning [Mr.] Byars against the railing surrounding the gymnasium floor.

In an effort to escape the clutches of Father, [Mr.] Byars proceeded to walk forward, pushed the attached body of Father backwards to the degree that Father took several st[e]ps backwards to brace his body.

Simultaneously, [Mr.] Byars['] pleas to Father to "get his hands off" and to "let me go," were ignored.

While Father had physically engaged [Mr.] Byars, Sister repeatedly hit [Mr.] Byars from behind on the head.

[Mr.] Byars, realizing he was being hit, aggressively turned to determine the origin of the attack, momentarily escaping the continued grasps of Father.

When [Stepsister] intervened and removed Sister, the attack stopped.

Within seconds, [Mr.] Byars was released from the grasps of [Father] after, again, pleading with Father to "let me go" and to "let me leave."

Immediately, [Mr.] Byars collected personal items and exited the gymnasium.

As a result of the January 21, 2011 incident, Mr. Byars was suspended as a cheerleading coach. In his Complaint, Mr. Byars concedes that he deserved "appropriate discipline" for his "inexcusable outburst of anger[,]" but he alleges that both Director Randy Frazier and Assistant Director Jeff Kelley acted tortiously in their communications and conduct following the incident. According to Mr. Byars' Complaint, the incident was captured by a gymnasium surveillance camera, the videotape from which was viewed by both Mr. Frazier and Mr. Kelley, which allowed them to "kn[o]w all of the movements that constituted the January 21 Incident." Moreover, the Complaint states that Father "personally confirmed" to Mr. Frazier that he simply "lost [his] footing and fell[,]" that he was not attacked or assaulted by Mr. Byars, that he was not injured as a result of the incident, and that he missed work the following Tuesday due to a prior personal commitment.[2]

Despite having viewed the videotape and spoken with Father, Mr. Frazier recounted the incident in a manner different from what, according to Mr. Byars, actually occurred. Mr. Byars' Complaint states that following the incident, parents/grandparents of cheerleaders approached Mr. Frazier seeking to delay Mr. Byars' suspension until after an upcoming cheerleading competition.

Patsy Duncan is the grandmother of a Westview cheerleader who witnessed the incident. Ms. Duncan's granddaughter informed her that Father had simply fallen when he slipped on a placard. However, at a meeting with Mr. Frazier and Mr. Kelley requested by

---

[2]According to Plaintiffs' brief to this Court, Father attended work on the Monday following the incident.

her, Mr. Frazier told Ms. Duncan that Father was injured when Mr. Byars "threw or slung Father to the ground" and that this injury prevented Father from reporting to work the following Monday. Mr. Frazier assured Ms. Duncan that his recitation of the incident was correct based upon his having seen the videotape; however, Ms. Duncan later viewed the tape herself, and she found Mr. Frazier's version of events to be "materially inconsistent" with the videotape.

Lisa Taylor's daughter is a cheerleader who witnessed the incident, and she informed her mother that Father had simply "tripped over a mat." Based upon Ms. Taylor's request, Ms. Taylor met with Mr. Frazier and Mr. Kelley at the Weakley County Board of Education Office, apparently during business hours. At the meeting, Ms. Taylor recounted her daughter's version of the incident. In response, Mr. Frazier and Mr. Kelley told Ms. Taylor that she was incorrect and that Mr. Byars had "attacked" and physically injured Father.

Kim Kirby's daughter is also a cheerleader who witnessed the incident. Ms. Kirby's daughter told her that, during an argument with Sister, Mr. Byars "stomped" Sister's cell phone. When Father tried to pull Mr. Byars and Sister apart, Mr. Byars "pulled away from Father's grasp causing Father to step onto a poster on the gym floor, slip and fall." Both Ms. Kirby and her daughter's father then visited Father's office, as principal, where they viewed the videotape of the incident. Ms. Kirby subsequently telephoned Mr. Frazier, apparently at his office during business hours, and Mr. Frazier told Ms. Kirby that "[Mr.] Byars threw Father to the floor." Ms. Kirby, however, then informed Mr. Frazier that she had viewed the videotape of the incident and she stated that "nothing in the video recordation shows [Mr.] Byars throwing Father on the floor."

According to the Complaint, shortly after Mr. Frazier's telephone conversation with Ms. Kirby, "Frazier, Kelley, and [school system attorney] Sam Jackson had a conference call with Father [] telling Father that he would be fired if all copies of the video recordation . . . were not collected and destroyed immediately." Moreover, Mr. Frazier sent Father the following e-mail:

> This is to confirm the conversation we just had with the system's attorney, Sam Jackson. As we discussed, it has come to my attention that several people not employed by the school system have been allowed to view the video of the incident between you and your son, David Byars, Jr., which happened January 21, 2011. Further, I have become aware that at least one faculty member has a copy of this video on a flash drive or some other electronic storage device. During our conversation, you confirmed my understanding and indicated that your son has a copy of the video in his possession. As we discussed, this video should not be viewed by anyone from this day forward without my express

written permission. Further, you are to contact your son, David Byars, Jr. and any other faculty member who has a copy of this video and collect any copies of the video and confirm their destruction before noon today. Finally, as we discussed, this is a directive and any failure to comply will result in disciplinary action up to and including termination.

According to Mr. Byars' Complaint, Mr. Kelley, instructed by Mr. Frazier, "threatened [Mr.] Byars with sanction" if he failed to destroy the videotape of the incident. In fact, Mr. Kelley "came to [Mr.] Byars to witness [Mr.] Byars[s'] delet[ion of] the video recordation . . . from [Mr.] Byars' hard drive."

On February 2, 2011, Mr. Frazier banned Mr. Byars from coming onto Westview property without the express written permission of an "authorized person from the Weakley County Board of Education." In doing so, he contacted the chief of the Martin Police Department and requested that Mr. Byars be arrested if he violated the ban, which according to Mr. Byars, "communicat[ed] that [Mr.] Byars['] presence on Westview property was a danger to Westview property and/or Westview students and personnel." According to the Complaint, to "stop the spreading of false statements by [Mr.] Frazier," Mr. Byars authored and transmitted an email to "former colleagues" on February 4, 2011. Shortly thereafter, Mr. Frazier, without Mr. Byars' knowledge, blocked Mr. Byars' email account from the educational network, according to Mr. Byars' Complaint, "for the purpose of suppressing the truth to cover-up the false statements[.]"

Mr. Byars' Complaint additionally states that "[a]t various times in January and February 2011, Frazier, either one-on-one or as a group or both, communicated false information concerning the incident to Gath Meeks, Gordon Morris, Sarah Ann Pentecost, Jeff Perkins, Joan Pritchett, Lindell Roney, Doug Sims, Barbara Trentham and Steve Vantrease[.]" Also, on April 15, 2011, Mr. Frazier "directly or indirectly[] communicated to [Mr.] Byars' teaching supervisor, Dr. Doster, that [Mr.] Byars had filed a lawsuit against the Weakley County Board of Education" when Mr. Frazier knew that Mr. Byars had not done so.

As a result of the alleged false communications between Mr. Frazier and Mr. Kelley and others, false information regarding the incident "spread throughout the Martin-Weakley County community." These false statements "created doubts and or erroneous beliefs that [Mr.] Byars, during the January 21 Incident, in some violent way, physically attacked Father, including throwing Father to the ground and, thereby, injuring Father, in the presence of assembled students under the tutelage of [Mr.] Byars." "The false information . . . spawned rumors and speculations so widespread in the Martin-Weakley County community that [Mr.] Byars, in the eyes of a person who does not know the truth, has become a person of ridicule

-6-

and mistrust." Despite having been given an opportunity to recant and/or retract his false statements, Mr. Frazier has refused to do so.

On April 28, 2011, Mr. Byars, along with his wife, Elizabeth Byars, M.D. (collectively, "Plaintiffs") filed suit against Randy Frazier and Jeff Kelley (collectively, "Defendants") alleging the following causes of action: slander, false light, obstruction of justice, defamation, intentional infliction of emotional distress, and loss of spousal consortium. Plaintiffs' Complaint specifically alleged that Mr. Frazier's and Mr. Kelley's acts/omissions were not within the scope of their duties and responsibilities as employees of the Weakley County Board of Education. Along with their Answer, Defendants filed a Motion to Dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6) based upon Plaintiffs' alleged failure to state a claim upon which relief could be granted. Defendants argued, among other things, that their conduct is immunized under the Governmental Tort Liability Act, Tennessee Code Annotated section 29-20-205(2).

On July 14, 2011, the trial court entered an Order granting Defendants' Motion to Dismiss, concluding that it could "reach no conclusion except that the defendants were operating in their official capacity with the Weakley County School System when they spoke with the grandmother and parents of the cheerleaders[,]" and therefore, that Defendants were immunized against Plaintiffs' claims of slander, false light, defamation and intentional infliction of emotional distress. Additionally, the court dismissed Plaintiffs' obstruction of justice claim finding "no such tort" in Tennessee,[3] and based upon its dismissal of the underlying causes of action, it dismissed Mrs. Byars' loss of spousal consortium claim.[4] Plaintiffs appeal.

## II. ISSUE PRESENTED

Appellants present the following issue for review, as summarized:

1.  Did the trial court err in finding Defendants were necessarily acting within the scope of their employment, and therefore, in granting Defendants' motion to dismiss?

---

[3]The dismissal of the obstruction of justice claim is not appealed.

[4]The trial court did not reach the other issues raised in Defendants' Motion to Dismiss, namely 1) that Plaintiffs failed to allege outrageous conduct to support their intentional infliction of emotional distress claim; 2) that Plaintiffs failed to plead their slander and defamation claims with the requisite specificity; and 3) that Plaintiffs' slander and false light claims could not be sustained as the statements "were already independently circulating in the public realm."

For the following reasons, we find a question of fact exists as to whether Defendants acted within the scope of their employment in communicating with Plaintiff's teaching supervisor, in communicating with the named individuals, and in ordering destruction of the surveillance video tapes, and therefore, we reverse the trial court's dismissal of Plaintiffs' slander, false light, defamation, intentional infliction of emotional distress and loss of consortium claims with regard to such conduct. The decision of the trial court is affirmed in all other respects. The case is remanded for further proceedings consistent with this opinion.

## III. STANDARD OF REVIEW

A motion to dismiss under Rule 12.02(6) tests only the legal sufficiency of the complaint. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (citing *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.2d 706, 710 (Tenn. 2003); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); *Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn. 1997)). Thus, a 12.02(6) motion is resolved solely by an examination of the pleadings. *Id.* (citations omitted). A defendant moving to dismiss "'admits the truth of all of the relevant material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).

A court considering a motion to dismiss "'must construe the complaint liberally, presuming all factual allegations to be true and giv[e] the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). However, the court is "not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Id.* (citing *Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1997)). A court "should grant a motion to dismiss 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). The trial court's determination regarding the adequacy of the complaint is reviewed de novo. *Id.* (citing *Brown v. Tenn. Title Loans*, 328 S.W.3d 850, 855 (Tenn. 2010); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

## IV. DISCUSSION

As stated above, the trial court dismissed Plaintiffs' Complaint finding Defendants immune from Plaintiffs' claims of slander, false light, defamation[5] and intentional infliction

---

[5]"The law of defamation includes both slander, which is spoken, and libel, which is written."
(continued...)

of emotional distress, finding no tort cause of action for obstruction of justice, and accordingly, finding no basis for a loss of consortium claim. As relevant to this case, the GTLA provides that

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee *within the scope of his employment* except if the injury arises out of:
>
> . . . .
>
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy,[6] or civil rights[.]

**Tenn. Code Ann. § 29-20-205(2)** (emphasis added). The central issue on appeal focuses on whether Plaintiffs pled any *facts* in their Complaint–beyond mere legal conclusions–to support their assertion that Defendants' conduct was outside of the scope of their employment, and therefore, that they are not entitled to GTLA protection.

"The question of whether an employee was acting within the scope of employment is generally a question of fact." *Tyus v. Pugh Farms, Inc.*, No. W2011-00826-COA-R3-CV, 2012 WL 938509, at *9 (Tenn. Ct. App. Mar. 19, 2012) (citing *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liability Ins. Co.*, 840 S.W.2d 933, 936-37 (Tenn. Ct. App. 1992)). However, "the question of whether an employee was acting within the scope of employment becomes a question of law 'when the facts are undisputed and cannot support conflicting conclusions' and 'when the employee's acts are clearly beyond the scope of his authority.'" *Id.* at *9 n.2 (citing *Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 937); *see also Thurmon v. Sellers*, 62 S.W.3d 145, 152 (Tenn. Ct. App. 2001) ("Generally, the issue of scope of employment is a question of fact, but it becomes a question of law when the facts are undisputed and no conflicting inferences are possible.").

---

[5](...continued)
*Watson v. Fogolin*, No. M2009-00327-COA-R3-CV, 2010 WL 1293797, at *4 (Tenn. Ct. App. Apr. 1, 2010) *perm. app. denied* (Tenn. Oct. 12, 2010) (citing *Quality Auto Parts, Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994)).

[6]In this case, the trial court correctly noted our Supreme Court's adoption of the separate tort of *false light* invasion of privacy. *West v. Media General Convergence, Inc.* 53 S.W.3d 640, 643-48 (Tenn. 2001) (emphasis added).

The GTLA does not define the term "scope of employment." ***Hughes v. Metro. Gov't of Nashville and Davidson County***, 340 S.W.3d 352, 363 (Tenn. 2011). The inquiry into whether an employee acted within the scope of his employment is "fact-intensive." ***Id.*** at 366. No bright-line rule exists, but the Restatement (Second) of Agency sections 228 and 229 provide guidance on the issue. The Restatement provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

**Restatement (Second) of Agency § 228, p. 504 (1957)**. Additionally, section 229 states:

> (2) In determining whether or not the conduct although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>
> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal.

**Restatement (Second) of Agency § 229, p. 506 (1957)**.

Because this case was disposed of on a motion to dismiss, the facts are effectively undisputed at this juncture. From Plaintiffs' Complaint, it appears that following the incident, parents/grandparents of cheerleaders approached Defendants, in their official capacities, seeking an explanation of, and/or a modification to, Mr. Byars' suspension. Such communications occurred at the request of the parents/grandparents and they took place during business hours either face-to-face at the Weakley County Board of Education Office or via telephone from such office. Accepting Plaintiffs' Complaint as true, as we are required to do, we conclude, as the trial court did, that "[we] can reach no conclusion except that the defendants were operating in their official capacity with the Weakley County School system *when they spoke with the grandmother and parents of the cheerleaders*." (emphasis added).

However, Defendants' communications with the parents/grandparents are not the only factual bases for Plaintiffs' claims. As grounds for their slander, false light and defamation claims, Plaintiffs also cite Mr. Frazier's contacting of the Martin Police Department, his alleged false communication to Mr. Byars' teaching supervisor regarding the filing of a lawsuit, and his alleged communication of falsehoods regarding the incident to Gath Meeks, Gordon Morris, Sarah Ann Pentecost, Jeff Perkins, Joan Pritchett, Lindell Roney, Doug Sims, Barbara Trentham and Steve Vantrease. With regard to their intentional infliction of emotional distress claim, Plaintiffs additionally cite Defendants' alleged threats and mandates regarding the destruction of the surveillance videos and Mr. Frazier's blocking of Mr. Byars' e-mail address from the system.

We find no basis for concluding other than that Mr. Frazier was acting within the course and scope of his employment in requesting that Mr. Byars be arrested if he came onto Westview property in violation of the ban. Additionally, we find that Mr. Frazier was necessarily acting within the course and scope of his employment when he blocked Mr. Byars' e-mail address from the system.

However, we find that the Complaint lacks sufficient information to determine whether other conduct alleged as grounds in Mr. Byars' Complaint was within the course and scope of Defendants' conduct. Specifically, from the Complaint, we are unable to determine, among other things, the setting of, motivation behind, and authorization for, Mr. Frazier's communications with Mr. Byars' teaching supervisor as well as with Gath Meeks, Gordon Morris, Sarah Ann Pentecost, Jeff Perkins, Joan Pritchett, Lindell Roney, Doug Sims, Barbara Trentham and Steve Vantrease (sometimes hereinafter, "the named individuals"). Moreover, because the Complaint fails to further identify the named individuals, we are unable to determine whether such individuals have any association with Westview High

School or the Weakley County Board of Education. Finally, we find that a question of fact exists regarding whether Defendants acted beyond the course and scope of their employment in ordering the destruction of the surveillance video tapes.

In sum, we find that Plaintiffs' Complaint, on its face, supports conflicting conclusions with regard to whether Defendants' conduct–communicating with Mr. Byars' teaching supervisor, communicating with the named individuals, and ordering the tapes' destruction–was within the scope of their employment. *See Tyus*, 2012 WL 938509, at *9 n.2 (citing *Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 937). Thus, a question of fact exists as to whether Defendants were acting within the scope of their employment, and the issue may not be disposed of as a matter of law. Accordingly, we reverse the trial court's dismissal of Plaintiffs' slander, false light, defamation, intentional infliction of emotional distress and loss of consortium claims.[7] The case is remanded for further proceedings consistent with this opinion.[8]

## V. CONCLUSION

For the aforementioned reasons, we find a question of fact exists as to whether Defendants acted within the scope of their employment in communicating with Plaintiff's teaching supervisor, in communicating with the named individuals, and in ordering destruction of the surveillance video tapes, and therefore, we reverse the trial court's dismissal of Plaintiffs' slander, false light, defamation, intentional infliction of emotional distress and loss of consortium claims with regard to such conduct. The decision of the trial court is affirmed in all other respects. The case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellees, Randy Frazier and Jeff Kelley, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[7]Again, the trial court's dismissal of Plaintiffs' obstruction of justice claim is not appealed.

[8]We express no opinion as to whether the additional grounds raised in Defendants' motion to dismiss, which were not addressed by the trial court, warrant a dismissal of Plaintiffs' claims.