**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY and Northland Insurance Company, Plaintiff/Appellee,**

v.

**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Defendant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 24, 1992.

Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

Darrell G. Townsend, Mary M. Bers, Howell, Fisher & Branham, Nashville, for defendant-appellant.

Gary Vandever and R. David Allen, Lebanon, for Tennessee Farmers Mut. Ins. Co.

Richard L. Colbert, Cornelius & Collins, Nashville, for Northland Ins. Co.

## OPINION

KOCH, Judge.

This appeal involves three insurance companies' obligations to provide coverage for a driver involved in an accident while driving a loaned automobile. After the insuror of the driver's employer denied coverage, the driver's insuror and the insuror that issued the automobile owner's garage policy filed suit in the Circuit Court for Wilson County seeking a declaratory judgment concerning their respective obligations.

The trial court, sitting without a jury, found that the driver was acting within the scope of his employment when the accident occurred and that the employer's insuror was required to provide the driver representation and coverage. On this appeal, the employer's insuror takes issue with the trial court's conclusions that the driver was acting within the scope of his employment and that it was obligated to provide the driver primary coverage. We have determined that the driver was not acting within the scope of his employment when the accident occurred and, therefore, reverse the trial court.

I.

Bobby Clay Thomas worked as a foreman for Macon Hardwood Lumber Company ("Macon"), a logging business owned by his father. He supervised approximately ten employees who performed logging and maintenance work. On occasion, he also performed other duties for Macon such as purchasing equipment and vehicles.

In January 1988, Mr. Thomas and his father decided to replace one of Macon's older pickup trucks. They also decided that Mr. Thomas should arrange to go to the Nashville Auto Auction with a friend's father who was a used car dealer. Mr. Thomas' father gave him complete authority to purchase a truck for the business if he found a suitable one. Mr. Thomas also told his father that he intended to look for an automobile for himself while he was at the auction.

Lowell Smith operated a used car lot in Red Boiling Springs and attended the Nashville Auto Auction every Wednesday in search of vehicles for his business. He frequently invited friends along to look for vehicles for themselves or to help him drive the vehicles he purchased back to his used car lot. Mr. Smith agreed to permit Mr. Thomas to accompany him to the auction. Mr. Thomas' father knew that his son would be accompanying Mr. Smith to the auction.

Instead of reporting for work at Macon's office on the morning of January 20, 1988, Mr. Thomas met Mr. Smith and two others at Mr. Smith's used car lot. The four men drove to Nashville in Mr. Smith's automobile. Mr. Thomas did not find a pickup truck for the business or an automobile for himself and, by midday, was eager to return to Red Boiling Springs because he was expecting to celebrate his birthday later in the day. Mr. Smith was not ready to leave, and so he permitted Mr. Thomas to drive a 1985 Buick he had just purchased back to his used car lot.

While returning to Red Boiling Springs over a different route selected by Mr. Smith, Mr. Thomas was involved in a head-on collision with an automobile driven by Linda Roddy. Mrs. Roddy and her son sustained serious injuries and eventually filed two suits against Mr. Thomas and Mr. Smith in the Circuit Court for Wilson County seeking damages totalling $260,000. These lawsuits, as well as Mrs. Roddy's later offer to settle all claims for $78,000, crystallized this dispute between the insurance companies.

When the accident occurred, Mr. Thomas had a personal automobile policy issued by Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers") providing $25,000 in coverage. Mr. Smith had a garage policy for his business issued by Northland Insurance Companies ("Northland") providing $50,000 in coverage. Macon also had a liability policy issued by American Mutual Liability Insurance Company ("American Mutual") providing $500,000 in coverage.

American Mutual denied coverage to Mr. Thomas on the ground that he was not acting within the scope of his employment when the accident occurred. Tennessee Farmers and Northland joined together in filing suit against American Mutual seeking a declaratory judgment concerning the three insurance companies' rights and obligations to Mr. Thomas. The trial court determined that Mr. Thomas was acting in the scope of Macon's business when the accident occurred and that American Mutual "must provide representation and coverage" to Mr. Thomas in the suits filed by Mrs. Roddy and her son.

## II.

We must first resolve the parties' disagreement concerning the standard by which this court should review the trial court's conclusion that Mr. Thomas was on Macon's business and was acting within the scope of his employment when the accident occurred. While all the parties agree that Tenn.R.App.P. 13(d) applies, they disagree concerning whether this court should presume that the trial court's factual conclusions are correct. Not surprisingly, American Mutual argues against, while Tennessee Farmers and Northland, having prevailed below, argue in favor of the presumption.

■■■ Tenn.R.App.P. 13(d) provides, in part, that:

Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding.

The presumption of correctness in Tenn.R.App.P. 13(d) applies only to findings of fact, not to conclusions of law. *Walker v. Nationwide Ins. Co.*, 813 S.W.2d 135, 140–41 (Tenn.Ct.App.1991); *Barnett v. Watco, Inc.*, 682 S.W.2d 212, 218 (Tenn.Ct.App. 1984). Factual findings can, however, lose the benefit of the presumption when they are based on undisputed evidence that reasonably can support only one conclusion. When no conflict in the evidence exists, the issue on appeal becomes a question of law upon which no presumption of correctness attaches. *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn.Ct.App.1989).

■■■ The general rule applies to findings concerning whether an employee was acting within the scope of his or her employ-

ment for the purpose of the respondeat superior doctrine. Generally, whether an employee is acting within the scope of his or her employment is a question of fact. *Craig v. Gentry,* 792 S.W.2d 77, 80 (Tenn. Ct.App.1990). However, it becomes a question of law when the facts are undisputed and cannot support conflicting conclusions. *Blackman v. Great Am. First Sav. Bank,* 233 Cal.App.3d 598, 284 Cal.Rptr. 491, 493 (1991); *Henderson v. Professional Coatings Corp.,* 72 Haw. 387, 819 P.2d 84, 89 (1991); *Sedalia Mercantile Bank & Trust Co. v. Loges Farms, Inc.,* 740 S.W.2d 188, 202 (Mo.Ct.App.1987).

■ Thus, whether an employee is acting within the scope of his employment can be reviewed as a question of law when the employee's acts are clearly beyond the scope of his authority. *Brown v. Housing Auth.,* 23 Conn.App. 624, 583 A.2d 643, 646 (1991); *Home Stores, Inc. v. Parker,* 179 Tenn. 372, 379, 166 S.W.2d 619, 622 (1942) (the issue is a question of law when an employee's departure from the employer's business is "of marked and decided character").

The evidence concerning the events of January 20, 1988 is largely undisputed. However, the conclusions to be drawn from the evidence are not so clear because of the dual purpose of the original trip to the auto auction, the additional purpose for the return trip, and Mr. Thomas' changing intentions or state of mind during the trip. *See Harris v. Oro–Dam Constructors,* 269 Cal. App.2d 911, 75 Cal.Rptr. 544, 549 (Ct.App. 1969). Mr. Thomas' return trip from the auction was not such a marked and decided departure from Macon's business that it was clearly beyond the scope of his employment.

If follows, therefore, that the trial court's finding that Mr. Thomas was on a "business trip" is a finding of fact entitled to a presumption of correctness. We have, however, reviewed the record de novo in accordance with Tenn.R.App.P. 13(d) and have determined that the evidence prepon-

derates against the trial court's conclusion that Mr. Thomas was on Macon's business when the automobile he was driving collided with Mrs. Roddy.

### III.

■ The doctrine of respondeat superior renders employers vicariously liable for the torts their employees commit while acting within the scope of their employment. *Parker v. Vanderbilt Univ.,* 767 S.W.2d 412, 415 (Tenn.Ct.App.1988); Restatement (Second) of Agency § 219(1) (1957); W. Page Keeton, *Prosser and Keeton on The Law of Torts* § 70, at 501–02 (5th ed. 1984) ("Prosser & Keeton"); Eugene H. Switzer, Comment, *Scope of Employment—Master's Liability to Third Persons,* 24 Tenn. L.Rev. 241, 242 (1956).

■ In order to hold an employer liable, the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred. *Hamrick v. Spring City Motor Co.,* 708 S.W.2d 383, 386 (Tenn.1986); *Midwest Dairy Prods. Co. v. Esso Standard Oil Co.,* 193 Tenn. 553, 555–56, 246 S.W.2d 974, 975 (1952).

While the principles embodied in the respondeat superior doctrine are relatively easy to articulate, they are not always easy to apply. *Deihl & Lord v. Ottenville,* 82 Tenn. (14 Lea) 191, 194 (1884). The doctrine does not lend itself to bright line rules, *Hall Grocery Co. v. Wall,* 13 Tenn. App. 203, 208 (1930), but rather requires the weighing and balancing of the facts and circumstances of each case. *Leeper Hardware Co. v. Kirk,* 58 Tenn.App. 549, 556, 434 S.W.2d 620, 623–24 (1968); *Fitzgerald v. Wood,* 34 Tenn.App. 345, 349, 238 S.W.2d 103, 105 (1950).

The courts have frequently turned to the Restatement (Second) of Agency for the theoretical framework for deciding whether an employee's conduct is within the scope of his or her employment. Restate-

ment (Second) of Agency § 228 (1957) provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

In addition, Restatement (Second) of Agency § 229 (1957) states:

(1) To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

 When an employee's job requires travel, an employer may be vicariously liable for the employee's negligence while traveling. The threshold issue in cases involving travel is whether the employment created the necessity for travel. *Daniels v. White Consol. Indus., Inc.*, 692 S.W.2d 422, 424–25 (Tenn.Ct.App.1985); *Leeper Hardware Co. v. Kirk*, 58 Tenn.App. at 558, 434 S.W.2d at 624. If the employee's duties created a necessity for travel, then the employee is within the scope of employment while traveling, as long as the employee does not deviate from the employer's business and engage in conduct the employer had no reason to expect. If, however, the employee's work played no part in creating the reason for travel and was only incidental to the trip, then the trip was not within the scope of employment. *Cunningham v. Union Chevrolet Co.*, 177 Tenn. 214, 220, 147 S.W.2d 746, 748 (1941); *Bowers v. Potts*, 617 S.W.2d 149, 156 (Tenn.Ct.App.1981); *Pratt v. Duck*, 28 Tenn.App. 502, 512–13, 191 S.W.2d 562, 566–67 (1945). Travel that serves a dual purpose, the employer's and the employee's or a third person's, will still be considered to be within the scope of employment. *Leeper Hardware Co. v. Kirk*, 58 Tenn. App. at 557, 434 S.W.2d at 624; Restatement (Second) of Agency § 236 (1957).

 The courts have devised several helpful tests to determine whether a particular trip is within the scope of employment. If the trip would have taken place even without the business reasons, then the trip is personal and not within the scope of employment. *Pratt v. Duck*, 28 Tenn.App. at 512–13, 191 S.W.2d at 566–67. If, how-

ever, the trip was one that would have required the employer to send another employee over the same route or to perform the same function if the trip had not been made, then the trip is within the scope of employment. *Whitehead v. Variable Annuity Life Ins. Co.*, 801 P.2d 934, 937 (Utah 1989).

■ If a trip is authorized by an employer for business purposes, then the return trip is also within the scope of employment as long as the employee has not deviated from the employer's business. *See Timmerman v. Kerr Glass Mfg. Co.*, 203 Tenn. 543, 545–46, 314 S.W.2d 31, 32 (1958) (a salesperson is within the course of employment from the time of leaving home until the time of return); *Cunningham v. Union Chevrolet Co.*, 177 Tenn. at 223, 147 S.W.2d at 749 (a return trip is as much a part of an errand as a going trip); *Craig v. Gentry*, 792 S.W.2d at 80 (the trip was "all part and parcel of ... [a] continued journey"). In the worker's compensation context, Professor Larson has stated that the return trip from a dual purpose journey, at any point where it constitutes a return from places that had to be reached for business reasons, is within the course of employment. 1 Arthur Larson, *The Law of Workmen's Compensation* § 19.29(a) (1990).

## IV.

Mr. Thomas had two reasons for traveling to the auto auction on January 20, 1988. He was looking for an automobile for himself and a truck for his employer. His employer had specifically authorized the trip and had also authorized him to purchase a truck if he found a suitable one. Thus, even though the trip was for a dual purpose, we find that the trip both to and from the auction was within the scope of Mr. Thomas' employment.[1]

■ The pivotal question is whether Mr. Thomas' return trip lost its business character somewhere along the line. We have determined that the evidence preponderates in favor of the conclusion that it did. Mr. Thomas' employer had no control

over his return and could not reasonably have anticipated what actually occurred. When the accident occurred, Mr. Thomas' conduct was primarily actuated by Mr. Smith.

Employers today are generally responsible for torts occurring within the zone of risk within which an employee might reasonably be expected to deviate, even for entirely personal reasons. Professor Keeton has pointed out:

It seems to be more or less generally agreed that the master will be liable at least for those slight departures from the performance of the work which might reasonably be expected on the part of servants similarly employed, and that the foreseeability of such deviations is an important factor in determining the "scope of employment" ... Essentially, the question is one of major and minor departures, having always in mind that the employer is to be held liable for those things which are fairly to be regarded as risks of his business.

Prosser & Keeton, *supra*, § 70, at 504–05; *see also* Restatement (Second) of Agency § 229(2) (1957); *Hall Grocery Co. v. Wall*, 13 Tenn.App. at 208 (posing the question concerning whether the employee was doing something his employment contemplated).

Mr. Thomas' father knew and authorized his son to accompany Mr. Smith to the auto auction. However, the record contains no evidence that he knew or should reasonably have anticipated that some time later in the day his son would arrange to borrow one of Mr. Smith's cars and drive himself back to Red Boiling Springs. The circumstances of the return trip were shaped by Mr. Thomas' personal desire to return home as early as possible and to assist Mr. Smith. Mr. Smith, not Mr. Thomas' employer, provided the automobile and dictated the route Mr. Thomas was required to take.

Transporting automobiles from the Nashville Auto Auction to Mr. Smith's used car lot in Red Boiling Springs is not part of Macon's business. At the time the accident occurred, Macon's business was merely in-

---

1. Neither party has proved to our satisfaction whether Mr. Thomas would still have taken the trip had either the personal reason or the business reason for the trip not been present.

cidental to Mr. Thomas' intention to assist Mr. Smith and to further his own personal interests. Therefore, we find that Mr. Thomas was not on Macon's business when he collided with Mrs. Roddy and, therefore, that Macon is not liable for Mr. Thomas' negligence under the doctrine of respondeat superior. Since Macon is not liable for Mr. Thomas' acts, American Mutual, its business insurance carrier, is not required to provide coverage or representation for Mr. Thomas.

### V.

We need not take up American Mutual's remaining issues since we have decided that it is not required to provide coverage or representation for Mr. Thomas. We reverse the judgment and remand the case for the entry of an order consistent with this opinion. We also tax the costs jointly and severally to Tennessee Farmers Mutual Insurance Company and Northland Insurance Companies for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.