# IN THE COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

FILED

October 2, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

JEREMY P. CRYE, a Minor, by ) KNOX CIRCUIT
his next friend and Mother, )
BEVERLY A. ROGERS, and ) NO. 03A01-9804-CV-00142
BEVERLY A. ROGERS, Individually )
)
    Plaintiffs/Appellants )
)
v. ) HON. HAROLD WIMBERLY
) JUDGE
LLOYD C. NORTON and )
MARY B. NORTON, )
)
    Defendants/Appellees ) AFFIRMED


Herbert S. Moncier and David S. Wigler, Knoxville, for Appellants.

Paul D. Hogan, Knoxville, for Apellee Mary P. Norton.


## O P I N I O N

_____INMAN, Senior Judge

The plaintiff, Jeremy P. Crye, seeks to impose liability on Mary B. Morton for the act of her son, Lloyd C. Norton, in shooting him. The trial judge granted her motion for summary judgment without enlargement. The plaintiff appeals, and presents for review the issue of whether the proof relevant to the motion established a genuine dispute of a material fact, thus requiring a merit trial.

The question on appeal is one of law, and the scope of review is _de novo_ with no presumption of correctness accompanying the judge's conclusions of law. _Union Carbide Corp. v. Huddleston,_ 854 S.W.2d 87 (Tenn. 1993).

# I

The complaint alleges that on August 21, 1993, Mary B. Norton owned certain property located in Straw Plains, Knox County, Tennessee, which was managed by her son, the co-defendant Lloyd Norton, who was alleged to have been her agent, servant and employee. The plaintiff was allegedly a guest of the tenants of the property when he was shot by Lloyd Norton.

Mary B. Norton filed her answer denying that Lloyd Norton was her agent, servant or employee, and averring that she had no knowledge of the shooting incident.

The plaintiff amended his complaint to allege that Lloyd Norton was the beneficial owner of the property because he transferred it to his mother in 1984 without consideration. Alternatively, the plaintiff alleged that Lloyd Norton owned the property as a joint venturer or partner with his mother.[1]

The complaint was again amended to allege that the defendants were landlords within the meaning of T.C.A. § 66-28-105(5) and "were subject to the duties of a landlord to provide essential services within the meaning of T.C.A. § 66-28-502(3)," which Lloyd Norton allegedly violated by "shutting off utilities, arming himself with a pistol, and by shooting a pistol at the plaintiff." These actions were alleged to have been the result of negligence on the part of Lloyd Norton, who was acting on behalf of his mother.

No answer was filed to the amended complaint.

The plaintiff filed motions for summary judgment "on the question of Lloyd Norton's liability for negligence and statutory violations," and "on the question of

---

[1] Which obviates a search for assets held by Lloyd Norton in the event his mother was exonerated.

Mary Norton's vicarious liability for Lloyd Norton's negligence and statutory violations." These motions were denied.

In support of her motion for summary judgment, Mary Norton filed her affidavit, testifying that she was 81 years old, that she owned the property where Lloyd Norton was residing, that she had no knowledge of the shooting, that Lloyd was neither her employee nor manager of the property, and that she allowed him to live "free of charge on that property and to collect and keep the rents."

The discovery depositions of Lloyd Norton and Mary Norton were filed, together with the transcribed testimony of Lloyd Norton given in the criminal court. The affidavits and depositions reveal that the plaintiff was invited to the property by Jeanne Parker, Lloyd Norton's girlfriend. There were others present whom Lloyd Norton described as "nasty, long-haired, mean and stoned." He asked them to leave the apartment; they declined, and he disconnected the electricity. One of them restored the power, and Lloyd Norton again disconnected the electricity, and locked the switch. The plaintiff thereupon removed or broke the lock and restored the power. Lloyd Norton then armed himself, accosted the plaintiff, and shot him. He testified variously that "I shot him," and "I was scared of him and shot into the ground."

The plaintiff alleges that Norton negligently shot him, not having intended to do so, and that summary judgment is ordinarily not appropriate in negligence cases, citing *Bowman v., Henard,* 547 S.W.2d 527 (Tenn. 1977). But summary judgment is appropriate if the facts reveal that as a matter of law (1) the relationship of master-servant did not exist, or (2) if it did, that the acts of the agent were not within the scope of his authority or duties. *See, Winford v. Hawissee Apt. Complex,* 812 S.W.2d 293 (Tenn. App. 1991). To hold Lloyd Norton liable, the

plaintiff must show that he was an employee of his mother, that he was on the business of his mother when he shot the plaintiff, and that he was acting within the scope of his employment. *Tenn. Farmers Mutual Ins. Co. v. American Mutual Ins. Co.,* 840 S.W.2d 933 (Tenn. App. 1992). We agree with the appellee that the depositions of the parties do not reveal a scintilla of evidence that the relationship between Lloyd Norton and Mary Norton was anything other than mother and son. Lloyd Norton controlled the property, rented it as he chose, paid the expenses, and kept the remainder.

The judgment is affirmed at the costs of the appellant.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
Don T. McMurray, Judge