NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0176n.06

No. 19-5512

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DAVID WALLACE,

    Plaintiff-Appellant,

v.

LEIDOS INNOVATIONS CORPORATION,

    Defendant-Appellee,

MICHELE MANTELLO,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 27, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

BEFORE: MERRITT, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

An employee of defendant Leidos Innovations Corporation allegedly defamed her former supervisor, plaintiff David Wallace. Wallace had just accepted a new job with another company, when the employee, Michele Mantello, told Wallace's new company that he had sexually harassed her and had "ethical issues." Wallace says that his job offer was rescinded as a result of Mantello's comments.

Although Wallace sued both Mantello and Leidos, this appeal concerns only Wallace's claims against Leidos, which turn on the common-law doctrine of respondeat superior. The district court granted summary judgment in favor of Leidos after concluding that there was no genuine dispute of fact that Mantello acted outside the scope of her employment when she made the alleged defamatory comments, so respondeat superior did not apply. We affirm.

I.

Plaintiff David Wallace worked for Leidos Innovations Corporation as its Vice President of Business Development. He had several subordinates, including Michele Mantello. Wallace and Mantello had a contentious relationship; each reported complaints involving the other to Leidos's human resources department while they worked together.

In Fall 2016, Wallace learned that Leidos was eliminating his position, and he separated from the company in January 2017. Soon after, he applied for a position as the Vice President of Business Development at Oak Ridge Associated Universities, Incorporated (ORAU). The position Wallace applied for was then held by Jamey Kennedy, but Kennedy was planning to retire once a successor was hired. ORAU took interest in Wallace because of his experience working at Leidos. At the time, Kennedy was engaged in a joint teaming effort with Leidos for a particular government contract, so ORAU believed Wallace would be equipped to step into her shoes. ORAU formally offered Wallace the position in May 2017. Wallace accepted.

After Wallace accepted the job offer, Kennedy called Mantello to discuss the project and mentioned that Wallace would be replacing her.[1] Mantello testified that when Kennedy informed her that Wallace would be taking over ORAU's portion of the project, she responded, "I don't know about Leidos, but I do not wish to work with him. However, that will not impact our potential for teaming in the future." Mantello said that when Kennedy asked if Wallace had sexually harassed her, she replied, "No, never." Mantello recalled that then, Kennedy had asked if Wallace discriminated against women, and she responded that she "felt that [she] was treated differently,"

---

[1]The call was not recorded, but Mantello and Kennedy both testified as to their recollections of it.

because her "role was minimized" and she did not get to work on high-profile projects. Kennedy asked a few more questions, but Mantello eventually referred her to human resources.

Kennedy also recalled that when she informed Mantello that Wallace would be replacing her, Mantello said that "she would not work with David Wallace again." But by contrast, Kennedy testified that Mantello had then asserted that "there were ethical issues, sexual harassment issues" with Wallace. Kennedy also remembered that she asked Mantello if it would be a problem to work with Wallace on the project and Mantello had repeated a second time, "I will never work with David Wallace again."

Additionally, once word spread among ORAU's employees that Wallace would be replacing Kennedy, two employees expressed concerns about him to Kennedy.[2] Kennedy relayed the concerns of all three individuals to ORAU's president, Andy Page. ORAU then formally rescinded its offer of employment to plaintiff.

Wallace filed suit in Tennessee state court, bringing claims for defamation, inducement of breach of contract, and intentional interference with business relationships against Mantello and against Leidos based solely on respondeat superior. Leidos removed the action to federal court. Mantello then moved to dismiss for lack of personal jurisdiction, and the court granted the motion after limited discovery, which included one-hour depositions of both Kennedy and Mantello. After Mantello's dismissal, Wallace took no additional discovery, so the record contains only the evidence generated during the jurisdictional dispute. And once discovery closed, Leidos moved for summary judgment on several grounds. The district court granted the motion, reasoning that there was no genuine issue of material fact that Mantello was acting outside the scope of her

---

[2]The substance of these concerns is not contained within the record.

employment when she made the allegedly defamatory statements to Kennedy, so Leidos could not be held liable for her actions. Wallace timely appealed.

## II.

We review the district court's summary-judgment determination de novo. *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is genuinely in dispute if a reasonable factfinder could resolve it either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the disputed issue of fact is material to liability, premature entry of summary judgment inappropriately supplants the role of the factfinder in adjudicating liability. *See id.* at 248–49. Denial of summary judgment where there is no genuine dispute of material fact, on the other hand, improperly permits a claim to go to the factfinder even though there can be only one possible outcome. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson*, 477 U.S. at 250–52. In determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 251–55. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 281 (6th Cir. 2012) (internal quotation marks omitted).

III.

A.

"The doctrine of respondeat superior renders employers vicariously liable for the torts their employees commit while acting within the scope of their employment." *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992) (citations omitted). To hold an employer liable under Tennessee law, a plaintiff must prove "(1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Id.* (citing *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 386 (Tenn. 1986)). Under Tennessee law, the inquiry into whether an employee is acting within the scope of her employment begins with the test set forth in the Restatement (Second) of Agency § 228. *See Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 363–64 (Tenn. 2011). The Restatement provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228. In short, § 228 renders an employer liable for the authorized conduct of its employees. But in addition to § 228, Tennessee courts are also guided by § 229, which provides several additional factors to consider when assessing whether an employee's actions, while unauthorized, are nevertheless within the scope of his employment:

> (1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

> (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>
> (a) whether or not the act is one commonly done by such servants;
>
> (b) the time, place and purpose of the act;
>
> (c) the previous relations between the master and the servant;
>
> (d) the extent to which the business of the master is apportioned between different servants;
>
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
>
> (f) whether or not the master has reason to expect that such an act will be done;
>
> (g) the similarity in quality of the act done to the act authorized;
>
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
>
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
>
> (j) whether or not the act is seriously criminal.

*Hughes*, 340 S.W.3d at 364 (quoting Restatement (Second) of Agency § 229). Because the test is reliant on weighing the facts and circumstances in each case, the general rule is that "[w]hether an employee is acting within the scope of his or her employment is a question of fact." *Id.* at 361. It becomes a question of law, however, "when the facts are undisputed and cannot support conflicting conclusions." *Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 937.

B.

Using these general principles, we must determine if a genuine dispute of fact exists over whether Mantello remained within the scope of her employment when she allegedly told Kennedy that Wallace had sexually harassed her and that he was not ethical. We conclude that there is not.

First, there is no genuine dispute of fact that Mantello's defamatory comments were not "of [a] kind" with the conduct Mantello was authorized to perform. Restatement (Second) of Agency § 228(1)(a). Mantello was responsible for "pursuing new business or rewinning current contracts for Leidos." In her words, that meant that she was responsible for "putting a team

together, developing a winning proposal, [the] post-marketing campaign, and winning the contract." But she also acknowledged that Leidos had a human resources department to handle inquiries related to former employees, and that she did not ordinarily discuss employment matters. Her supervisor likewise attested that "[i]t was not within Mantello's job duties to talk to outside entities about a former employee's performance with Leidos, and she was not authorized by Leidos to do so." Thus, the undisputed evidence demonstrates that Mantello was not authorized by Leidos to comment on her former supervisor's conduct. To put it differently, while Mantello could discuss the joint teaming effort between ORAU and Leidos, she went beyond her authority by fielding what was, in essence, an HR inquiry from Kennedy.

Second, as the district court found, there is no genuine dispute of fact that Mantello was "too little actuated by a purpose to serve [her] master" when she made the defamatory comments. *Id.* § 228(2). Mantello testified that she told Kennedy that "she did not know about Leidos," but that she "did not wish to work with [Wallace]." Kennedy similarly recalled that Mantello asserted that she would not work with Wallace again. In other words, Mantello acted in her own interests and disclaimed the interests of her employer when she told her counterpart at ORAU that she would work with Wallace. By doing so, "Mantello . . . risked jeopardizing the negotiations" by accusing Wallace of sexual harassment and ethical violations.

Either of these undisputed facts are fatal to plaintiff's claim under § 228 because, "if[ ] but only if" the disputed conduct meets the four factors of § 228(1) may it be considered within the scope of employment. *See Hughes*, 340 S.W.3d at 363–64; *Bowers v. Potts*, 617 S.W.2d 149, 153 n.1 (Tenn. Ct. App. 1981).

Finally, Wallace has forfeited his argument that Mantello's comments were at least incidental to her authorized conduct under § 229. Whether unauthorized conduct nevertheless

remains within the scope of employment requires application of a ten-factor, totality-of-the-circumstances test. *See* Restatement (Second) of Agency § 229(2)(a)–(j). Plaintiff cites § 229, but he makes no attempt to apply the factors to Mantello's conduct. "We have cautioned that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," are forfeited, "and that it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (brackets, ellipsis, citation, and internal quotation marks omitted). Plaintiff ran afoul of this basic and well-established rule when he left for us to puzzle out whether the factors under § 229 could lead a reasonable juror to conclude that Mantello's defamatory comments were incidental to her authorized conduct.

In sum, no reasonable juror could conclude that Mantello was authorized to discuss her former supervisor's performance with a third party, and Wallace has forfeited his argument that Mantello's comments were incidental to her authorized conduct. He has thus failed to show that the district court erred by granting summary judgment in favor of Leidos.

## IV.

For these reasons, we affirm the judgment of the district court.