IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2020 Session

## JANIEKA ELLINGTON v. CAJUN OPERATING COMPANY, ET AL

**Appeal from the Circuit Court for Shelby County**
**No. CT-003387-16   Mary L. Wagner, Judge**
_____

### No. W2020-00087-COA-R3-CV
_____

This case involves a claim for personal injuries that were sustained by a customer of a fast food restaurant.  The restaurant's manager burned the customer with hot grease following an altercation between the manager and the customer's boyfriend.  Thereafter, the customer brought a vicarious liability claim against the owner and operator of the restaurant based on the manager's actions.  After initial discovery, the defendants moved for summary judgment, arguing that the manager acted outside of the scope of her employment by throwing the hot grease at the plaintiff.  The trial court agreed and granted the defendants' motion for summary judgment, dismissing the plaintiff's claims.  Plaintiff appealed.  We affirm the trial court's decision and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Darrell J. O'Neal, Psonya Hackett, and Laura E. Smittick, Memphis, Tennessee, for the appellant, Janieka Ellington.

Kevin D. Bernstein and M. Roxana Rudolph, Memphis, Tennessee, for the appellees, Cajun Operating Company and Cajun Realty, LLC d/b/a Church's Chicken.

## OPINION

### I.   FACTS AND PROCEDURAL HISTORY

This case stems from an incident that took place at a Church's Chicken fast food

restaurant, located at 925 Poplar Avenue, Memphis, Tennessee ("the restaurant"). On January 20, 2016, Janieka Ellington ("Plaintiff") and her boyfriend, Prentiss Durr, purchased food from the restaurant by using its drive-through service. After purchasing their food, Plaintiff and Mr. Durr left the premises. When the couple opened the packages of their food, they discovered roaches in the food and returned to the restaurant.

Upon Plaintiff and Mr. Durr returning to the restaurant, they entered the building and asked to speak with a manager. Tammara Sprouse was the on-duty manager stationed at the front counter of the restaurant. Mr. Durr began speaking with Ms. Sprouse and requested a refund because of the roaches in their food. The exchange between Mr. Durr and Ms. Sprouse quickly became hostile, leading to the parties yelling at each other across the restaurant's front counter. Once the encounter became hostile, Ms. Sprouse called 911.

In the middle of Ms. Sprouse's 911 call, a physical altercation erupted between Mr. Durr and Ms. Sprouse. Ms. Sprouse opened a door next to the front counter that led to the lobby of the restaurant. Ms. Sprouse claimed that she opened the door to find another employee that could help handle the situation. When Ms. Sprouse opened the door, Mr. Durr and Ms. Sprouse collided, escalating the argument to a physical altercation. Eventually Mr. Durr and Ms. Sprouse were separated, and Plaintiff and Mr. Durr exited the restaurant.

As Plaintiff and Mr. Durr were exiting the restaurant, Ms. Sprouse obtained a bucket containing a hot substance from behind the front counter. Ms. Sprouse followed Plaintiff and Mr. Durr to the exit of the restaurant with the bucket in her hand. When Ms. Sprouse was at the door of the restaurant, Mr. Durr was standing near the car in which he and Plaintiff arrived, and Plaintiff was several feet outside of the restaurant's door. Seeing the couple outside of the restaurant, Ms. Sprouse stood in the doorway of the restaurant and threw the bucket containing the hot substance toward the couple. The substance contacted Plaintiff, causing significant burns to her skin. Plaintiff and Mr. Durr were completely outside of the restaurant when Ms. Sprouse threw the hot substance at the couple. Later, the parties were informed that the substance in the bucket was hot grease.

Immediately after Ms. Sprouse threw the bucket and hot grease at Plaintiff, Plaintiff and Mr. Durr went to a nearby emergency room to obtain treatment for Plaintiff's burns. Ms. Sprouse was fired for her actions and pled guilty to aggravated assault for burning Plaintiff with the hot grease. As a result of her guilty plea, Ms. Sprouse was placed on diversion under Tennessee Code Annotated section 40-35-313.

On August 19, 2016, Plaintiff filed a complaint for her injuries against Cajun Operating Company; Cajun Realty, LLC d/b/a Church's Chicken (collectively "Defendants"); and Tammara Sprouse. Plaintiff's claims included negligence, negligent supervision, negligent hiring, and several intentional torts based on the acts committed by Ms. Sprouse. Defendants answered on October 6, 2016, denying liability. Ms. Sprouse

answered Plaintiff's complaint on August 25, 2017, also denying liability.

After Plaintiff filed suit, discovery ensued. Discovery responses indicated that prior to the incident at the restaurant, Defendants conducted multiple inquiries to determine whether Ms. Sprouse had a criminal history. When Ms. Sprouse was first hired by Defendants in 2011, she indicated on her job application that she had never been convicted of a criminal offense other than a traffic violation. The parties agree that this was an accurate statement. In October 2012, the Defendants conducted a background check on Ms. Sprouse; the check indicated that she had no felony or misdemeanor records. Ms. Sprouse left her employment at the restaurant in 2013 and returned as a manager in 2014. When she returned, Defendants conducted another background check in January 2015. This second background check also indicated that Ms. Sprouse did not have a criminal history at that time.

On June 27, 2019, Defendants moved for summary judgment. In their motion, Defendants claimed that at the time of the incident, Ms. Sprouse did not act within the scope of her employment, so they could not be found vicariously liable for the actions of Ms. Sprouse. In support of their motion, Defendants also submitted a Tennessee Rule of Civil Procedure 56 statement of undisputed material facts and a memorandum of law.

Plaintiff responded to Defendants' motion for summary judgment on August 26, 2019. Plaintiff claimed that Ms. Sprouse was acting within the scope of her employment at the time of Plaintiff's injuries, so Defendants could be found vicariously liable. Plaintiff also submitted her own statement of undisputed material facts and a memorandum of law in support of her response. Many of the facts that Plaintiff listed in her statement were the exact same facts and wording as in Defendants' statement. However, Plaintiff did *not* file a direct response to Defendants' statement of undisputed material facts, as is required under Rule 56.03.[1] Her response included several additional facts that were largely undisputed. One of Plaintiff's additional facts was that Ms. Sprouse's previous posts on social media indicated that she had a propensity to commit violent acts. In response, Defendants stated that this allegation was a legal conclusion rather than a fact.

Ms. Sprouse did not file a written response to Defendants' motion for summary judgment, but she argued against granting the motion. Prior to the trial court's order on Defendants' motion for summary judgment, the court entered an order that voluntarily dismissed Ms. Sprouse without prejudice.[2]

---

[1] Rule 56.03 states, in part, that "[a]ny party opposing the motion for summary judgment *must . . . serve and file a response to each fact set forth by the movant* . . . . Each disputed fact must be supported by specific citation to the record." Tenn. R. Civ. P. 56.03 (emphasis added). The response by a non-movant under Rule 56.03 is required rather than a "preferred format." *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 775 (Tenn. Ct. App. 2001).

[2] Plaintiff's direct claims against Ms. Sprouse, including assault, battery, and intentional infliction of emotional distress, were also dismissed without prejudice.

The trial court heard Defendants' motion for summary judgment on September 5, 2019.[3] On September 27, 2019, the court entered a written order granting Defendants' motion. In its order, the court found that Ms. Sprouse's undisputed actions were clearly beyond the scope of her employment when she threw the bucket containing hot grease at Plaintiff, who had already exited the restaurant. Based on this finding, the court concluded that Defendants negated an essential element of Plaintiff's negligence claim. The trial court also found that the undisputed facts demonstrated that Defendants did not breach a duty to Plaintiff for the hiring, retention, or supervision of Ms. Sprouse. As a result, the court granted summary judgment in favor of Defendants.

After the trial court entered its order granting Defendants' motion for summary judgment, Plaintiff filed a motion to alter or amend under Rule 59.04 of the Tennessee Rules of Civil Procedure. In her motion, Plaintiff argued that even though the facts provided by Defendants were undisputed, they supported conflicting conclusions, so summary judgment should not have been granted. The trial court disagreed and denied Plaintiff's motion to alter or amend.

Plaintiff timely appealed.

## II.    ISSUES PRESENTED

Although not stated as such, Plaintiff raises two issues on appeal:

1. Whether the trial court erred in granting Defendants' motion for summary judgment; and

2. Whether the trial court erred in considering and relying on facts that were not included in either parties' statement of undisputed facts.

On appeal, Plaintiff does not take issue with the trial court's decision to deny her post-judgment motion to alter or amend. Additionally, Plaintiff does not discuss her claims for Defendants' alleged negligent supervision or negligent hiring of Ms. Sprouse. As a result, Plaintiff has waived these issues and claims. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (stating a party waives an issue by either failing to properly designate it as an issue or by failing to include an argument on the issue in accordance with Tenn. R. App. P. 27(a)(4)); *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) (stating "[i]t is not the role of the courts . . . to research or construct a litigant's case or arguments, . . . and where a party fails to develop an argument in support of [its] contention . . ., the issue is waived").

---

[3] The record does not include a transcript or a statement of the evidence from the hearing on Defendants' motion for summary judgment.

For the reasons stated herein, we affirm the trial court's decision to grant summary judgment in favor of Defendants and remand.

## III.    STANDARD OF REVIEW

A trial court's decision on a motion for summary judgment is reviewed *de novo* with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019) (citing *Beard v. Branson*, 528 S.W.3d 487, 494-95 (Tenn. 2017)). On appeal, this Court must "make a fresh determination about whether the requirements of Rule 56 have been met." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

A moving party who does not bear the burden of proof at trial can meet its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *TWB Architects, Inc.*, 578 S.W.3d at 887 (quoting *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015)). Then, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* at 889 (quoting *Rye*, 477 S.W.3d at 265). We accept the evidence presented by the nonmoving party as true, allow all reasonable inferences in its favor, and resolve any doubts about the existence of a genuine issue of material fact in its favor. *Id.* at 887.

## IV.    DISCUSSION

Plaintiff asserts that Defendants are vicariously liable for the actions of Ms. Sprouse under the doctrine of *respondeat superior*. "The doctrine of respondeat superior renders employers vicariously liable for the torts their employees commit while acting within the scope of their employment." *Tenn. Farmers Mut. Ins. v. Am. Mut. Farmers Ins.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 363 (Tenn. 2011). To hold an employer liable under the doctrine of *respondeat superior*, the plaintiff must prove three elements: "(1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Tenn. Farmers Mut. Ins.*, 840 S.W.2d at 937. In the present case, the parties agree that the dispositive issue is whether Ms. Sprouse acted within the scope of her employment when she threw the hot grease at Plaintiff.

Typically, whether an employee acted within the scope of his or her employment is a question of fact. *Hughes*, 340 S.W.3d at 361; *Tenn. Farmers Mut. Ins.*, 840 S.W.2d at 937. This issue becomes a question of law "when the facts are undisputed and cannot support conflicting conclusions." *Tenn. Farmers Mut. Ins.*, 840 S.W.2d at 937. Stated differently, whether an employee is acting within the scope of his employment is a question of law "when the employee's acts are clearly beyond the scope of his authority." *Id.* To help determine whether an employee acted within the scope of his employment, Tennessee courts have relied on the Restatement (Second) of Agency for guidance. *See, e.g.*, *Hughes*, 340 S.W.3d at 363; *Tyus v. Pugh Farms, Inc.*, No. W2011-00826-COA-R3-CV, 2012 WL 938509, at *8 (Tenn. Ct. App. March 19, 2012); *Morris v. Collis Foods*, No. W2001-00918-COA-R3-CV, 2002 WL 1349514, at *3-4 (Tenn. Ct. App. June 19, 2002).

"Whether the conduct of an employee was within the scope of his employment is fact-intensive. While there is no bright-line rule, the several factors identified in the Restatement (Second) of Agency sections 228 and 229 provide proper guidance on the issue." *Hughes*, 340 S.W.3d at 366. Section 228 states:

(1) Conduct of a[n employee] is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a[n employee] is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958).

In addition to the factors listed in section 228, section 229 lists more detailed and extensive factors to help answer this inquiry:

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

*Id.* § 229; *see also Hughes*, 340 S.W.3d at 364.

When applying the factors listed in sections 228 and 229, several of the factors clearly indicate that Ms. Sprouse did *not* act within the scope of her employment when she threw the bucket containing hot grease at Plaintiff. First, the kind of work Ms. Sprouse was employed to perform did not include throwing hot grease at a customer. *See* Restatement (Second) of Agency § 228(1)(a). In fact, Defendants' security management policy specifically prohibits an employee from using violence or physical force to control a disorderly customer. Rather than help control unruly customers, Ms. Sprouse testified that her duties as a manager included taking inventory, keeping the restaurant organized, and managing the other employees. Based on Defendants' security policy and Ms. Sprouse's description of her duties as a manager, throwing hot grease on a customer that had exited the restaurant was neither the kind of act Ms. Sprouse was employed to perform nor an action commonly undertaken by any employee. Further, Defendants had no reason to expect that she would use such force.[4] *Id.* §§ 228(1)(a), 228(1)(d), 229(2)(a), 229(f).

---

[4] Plaintiff argues that Ms. Sprouse was never trained on the security policy, so it is unclear what she was employed to perform. Whether Ms. Sprouse was specifically trained on the policy does not alter the conclusion that Defendants did not expect Ms. Sprouse to act violently. The policy itself indicates that Defendants did not expect Ms. Sprouse, or any other employee, to use physical force on a customer.

- 7 -

Plaintiff claims that Ms. Sprouse's alleged propensity for violence, as evidenced by her previous social media posts, made her use of force expectable by Defendants. We disagree. It is undisputed that Defendants conducted multiple criminal background checks on Ms. Sprouse prior to the incident at issue. Inquiries made in 2011, 2012, and 2015 all demonstrated that, at the time, Ms. Sprouse did not have a criminal history. Defendants relied on these results when they hired and retained Ms. Sprouse as an employee of the restaurant. Until the incident in this case, Defendants had no reason to expect that Ms. Sprouse would use violent force against a customer.

Instead of using physical force on an unruly customer, Defendants' security policy requires the opposite; it states that employees should maintain a reasonable distance from the customer. In contrast, after the physical altercation between Ms. Sprouse and Mr. Durr ended, Ms. Sprouse followed the couple outside and reengaged them by throwing the hot grease on Plaintiff. In her deposition, Ms. Sprouse testified that in the time that she worked at the restaurant, no other person had thrown grease at a customer. This testimony was unrefuted. As such, her actions were an extreme departure from those normally authorized by Defendants. *See id.* § 229(2)(g), (i).

Additionally, it is evident that Ms. Sprouse throwing hot grease at Plaintiff did not act to serve the purpose of handling a disorderly customer. *See id.* §§ 228(1)(c), 229(2)(b). Plaintiff, Mr. Durr, and Ms. Sprouse all stated that Ms. Sprouse and Mr. Durr were separated and that Plaintiff and Mr. Durr exited the restaurant *before* Ms. Sprouse followed them to the door with the hot grease. Once the parties were separated and the couple had exited, there was no reason for Ms. Sprouse to pursue them. Ms. Sprouse following the couple to the door after the altercation ended did *not* serve Defendants' purpose of handling an unruly customer or serving food at the restaurant.

Furthermore, Ms. Sprouse's guilty plea on the aggravated battery charge indicates that her actions were seriously criminal in nature. The unlawfulness of Ms. Sprouse's actions clearly exhibits that she acted outside the scope of her employment. *See id.* § 229(2)(j).

Before the trial court and on appeal, the parties heavily debated whether Ms. Sprouse was inside the restaurant, or "on the premises," at the time she threw the grease at Plaintiff and whether her area of control as a manager extended to the parking lot. Similarly, Plaintiff vehemently asserts that Ms. Sprouse being on-duty, inside the restaurant, and responding to the couple's complaints is evidence that Ms. Sprouse acted within the scope of her employment for the entirety of her encounter with the couple. While Ms. Sprouse's actions may have occurred while she was on-duty and within her area of control, that does not automatically lead to a conclusion that she acted within the scope of her employment. *See Hughes*, 340 S.W.3d at 366 (stating "several factors" should be considered and "there is no bright-line rule" for determining an employee acted within the

scope of his or her employment); Restatement (Second) of Agency §§ 228(1)(b), 229(2)(b), 229(e). We find that the facts and discussion in *Morris v. Collis Foods*, W2001-00918-COA-R3-CV, 2002 WL 1349514 (Tenn. Ct. App. June 19, 2002), are analogous to the present case.

In *Morris v. Collis Foods*, the plaintiff was a customer at a Waffle House restaurant. *Id.* at *1. While he was inside the Waffle House, the plaintiff became upset with the waitress who was serving his table. *Id.* Eventually, the plaintiff began to exit, but before leaving, he expressed his displeasure with the waitress. *Id.* In response to the plaintiff's comments, the waitress threw a nearby item at the plaintiff,[5] striking him and causing him injuries. *Id.* The plaintiff brought suit against the waitress and the owner of the Waffle House. *Id.* On appeal, as in the present case, the issue was whether the waitress acted within the scope of her employment at the time of the incident. *Id.* at *4-5. Although the waitress was an on-duty employee, was inside the Waffle House, and was serving the plaintiff, this Court determined that she did not act within the scope of her employment when she injured the plaintiff. *Id.* at *5. In reaching this conclusion, this Court considered the factors listed in the Restatement (Second) of Agency sections 228 and 229. *Id.* at *4-5. The waitress's conduct was prohibited by her employer's policies; her actions were not commonly taken by other employees; and her injuring a patron by throwing an item at him did not serve Waffle's House's business purpose. *Id.* Again, the waitress simply being on duty and serving the plaintiff moments prior to the incident did not render a conclusion that she acted within the scope of her employment. *See id.* at *5.

As in *Morris v. Collis Foods*, the facts of this case clearly show that Ms. Sprouse acted outside of the scope of her employment when she threw the hot grease at Plaintiff. *See id.* at *4-5; Restatement (Second) of Agency §§ 228(1), 229(2). After considering the factors listed in sections 228(1) and 229(2) of the Restatement (Second) of Agency, we find that the facts are undisputed and cannot support conflicting conclusions on this issue. Therefore, we affirm the trial court's conclusion that Ms. Sprouse acted beyond the scope of her employment as a matter of law. *See Tenn. Farmers Mut. Ins.*, 840 S.W.2d at 937 (stating whether an employee acts beyond the scope of employment becomes a question of law "when the facts are undisputed and cannot support conflicting conclusions").

On appeal, Plaintiff also argues that the trial court improperly weighed the evidence by relying on facts that were not included in either Plaintiff's or Defendants' statements of undisputed material facts. In particular, Plaintiff asserts that the trial court improperly concluded that Ms. Sprouse exited the restaurant to reengage the couple and throw the hot grease on Plaintiff.

Plaintiff correctly states that when a court reviews a motion for summary judgment,

---

[5] In *Morris*, there was a factual dispute as to whether the item was a syrup container or a coffee mug. *Id.* at *1 n.1.

"[a court] is not permitted to weigh the evidence, and 'must accept the nonmoving party's evidence as true, and view both the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party.'" *Tyus*, 2012 WL 938509, at *9 (quoting *Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011)). However, the trial court did not render its decision by weighing the evidence. Instead, it relied on material facts that were presented, and largely undisputed, by each party.

The trial court specifically stated that it relied, in part, on three undisputed facts: (1) "*[a]fter the altercation* between Mr. Durr and Ms. Sprouse, Plaintiff and Mr. Durr exited the restaurant and walked to their vehicle;" (2) "Ms. Sprouse then opened the door of the restaurant and threw a bucket containing a hot substance toward Plaintiff . . . ultimately burning Plaintiff;" and (3) "Plaintiff and Mr. Durr *were completely out of the restaurant* when Ms. Sprouse threw the hot substance." (Emphasis added). These facts were listed in Defendants' statement of undisputed material facts. The same facts were also listed *with the exact same wording* in Plaintiff's statement of undisputed facts. As a result, it is undisputed that Ms. Sprouse re-engaged Plaintiff and Mr. Durr *after* the physical altercation had ended.

Additionally, as we have previously explained, when the facts of this case are considered as a whole, whether Ms. Sprouse was completely outside of the restaurant or merely standing at the front door at the time she threw the grease does not alter our conclusion. The circumstances clearly show that Ms. Sprouse acted outside the scope of her employment when she threw the hot grease at Plaintiff.

Also, Plaintiff's argument that the trial court improperly relied on facts that were not included in a party's statement of material facts is without merit. On a motion for summary judgment, as long as the facts considered by the court are included in the record and admissible in evidence, the court may rely on them in rendering its decision. *See* Tenn. R. Civ. P. 56.04 (stating "the judgment sought shall be rendered forthwith if the *pleadings, depositions, answers to interrogatories, and admissions on file* . . . show that there is no genuine issue as to any material fact") (emphasis added); *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009); *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 119 (Tenn. 2007). Regardless, the trial court's written order granting summary judgment indicates that it properly relied on undisputed facts. The undisputed material facts stated in the trial court's order were adopted directly from the parties' separate statements of undisputed material facts. As we previously recognized, the court specifically relied on three key undisputed facts that were included in each party's statement of facts. Those three facts formed the basis for the court's conclusion that Ms. Sprouse chose to follow the couple to the door of the restaurant and reengage in the altercation by injuring Plaintiff. Accordingly, we cannot say that the trial court improperly relied on facts that were not included in the parties' statements of material facts.

Based on our forgoing discussion, we find that the trial court properly determined

that Ms. Sprouse acted outside of the scope of her employment when she injured Plaintiff by throwing the hot grease at Plaintiff and Mr. Durr.  As a result, we also agree that Defendants successfully negated an essential element of Plaintiff's vicarious liability claim.  *See Tenn. Farmers Mut. Ins.*, 840 S.W.2d at 937.  Therefore, we affirm the trial court's decision to grant summary judgment in favor of Defendants.

### V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court to grant summary judgment in favor of Defendants.  We remand for further proceedings consistent with this opinion.  Costs of this appeal are taxed to appellant, Janieka Ellington, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE